## ROBISON ET AL. *vs.* ROBISON, PRO AMI.

[BILL IN EQUITY BY MARRIED WOMAN AGAINST HER HUSBAND AND HIS JUDGMENT CREDITORS TO ENJOIN SALE OF LANDS UNDER EXECUTION AGAINST HUSBAND, AND TO ESTABLISH A RESULTING TRUST IN HER FAVOR IN SAID LAND.]

1. *Parties defendant to bill in chancery, misjoinder of; how only can be taken advantage of.*—The objection of misjoinder of parties defendant to a bill in chancery can only be taken advantage of by those improperly joined, and is fatal to the suit only against them.

2. *Husband; when competent witness for wife.*—The husband is a competent witness for his wife to prove what disposition he has made of money belonging to her separate statutory estate.

3. *Resulting trust; what creates, and how may be proved.*—If a husband purchases an estate with money, *the corpus*, of his wife's separate estate, and takes a deed in his own name, a trust results to the wife which may be proved by parol.

4. *Same.*—To raise a resulting trust the money advanced must form the consideration of the purchase and be converted into land. A subsequent advance will not suffice.

5. *Husband, possession of property by; when will be considered possession of the wife.*—Possession by a husband of property to which a trust in favor of his wife has attached, is the possession of the wife.

APPEAL from Chancery Court of Butler.
Heard before Hon. ADAM C. FELDER.

The main facts of this cause are as follows: In the year 1860, L. H. Robison, the husband of complainant, at the request of his mother-in-law, who was the executrix of the estate of complainant's father, bid off, at a sale made by

the administrator of one Hawkins, deceased, the lands described in the bill, and executed his promissory note therefor, payable 12 months after date. No money was paid for the land until 1863, when the executrix of his wife's father, as a part of his wife's distributive share of said estate, and with the understanding that the money furnished was to pay the debt due for the land, and that the land was to belong to his wife, advanced to L. H. Robison a sum of money sufficient to pay for the land, which was accordingly done. On the 26th of January, 1863, Robison took a deed to these lands in his own name.

Early in the year 1861, L. H. Robinson executed to the Selma & Gulf Railroad Company a note for stock, which was transferred to Boyle, Milner & Co., for work done by them on said road in the spring of 1861.

Boyle & Milner, as surviving partners of Boyle, Milner & Co., brought suit upon said note, obtained judgment thereon, and caused the issue of an execution which was levied upon the lands described in the bill, which were duly advertised and sold by the sheriff in the year 1867, at which time, the date of filing the bill, Robison was insolvent.

At the sale, and before the bidding commenced, complainant, by her solicitor, fully informed all by-standers and bidders of her equities in the case, and that her husband had no real interest in said lands; this information was also privately given to the agent and to the attorney of Boyle & Milner, before the sale. Notwithstanding this, said Boyle & Milner, by their agent, purchased said lands, and received the sheriff's deed therefor.

The original bill and the amendments are filed by Mrs. Robison, by next friend, against her husband, L. H. Robison, Boyle & Milner, and the widow and children of Smith, a deceased member of the firm of Boyle, Milner & Co. The bill prays that the land described in the bill, be decreed to be the property of complainant; that the defendant, Robison, be directed to make a deed to her of the same ; that Boyle & Milner, and their agents, &c., be perpetually enjoined from interfering with said lands, that the sheriff's deed be

delivered up, cancelled and held for naught, and for general relief.

The defendants, Boyle & Milner, demurred to the bill, and among other causes, specified—

1st. For want of equity.

2d. That the widow and children of the deceased partner, Smith, are improperly made parties defendant.

The demurrer was overruled. The cause was submitted for final decree, on bill and amendments, answers and decree *pro confesso*, and the testimony of various witnesses; the substance of the testimony being as above set out.

Among the witnesses examined on the part of complainant, was L. H. Robison, husband of complainant, and a motion was made by the defendants, Boyle & Milner, to suppress his deposition, on the ground that the husband can not be a witness for the wife. This motion was overruled.

On final hearing, the chancellor granted the relief prayed for, decreed the land to be the property of complainant, and that the husband make a deed of the same to her; that the deed made by the sheriff be delivered up and cancelled, &c. The defendants appeal, and among other errors, assign—

1st. The decree rendered.

2d. Overruling the demurrer to the bill.

3d. Overruling the motion to suppress the deposition of L. H. Robison.

WATTS & TROY, and J. K. HENRY, for appellants.—1. The bill shows that the judgment of Milner & Boyle was obtained and levied, and lands advertised for sale, and was in the act of being sold, before any notice of the complainant's rights was made known to the judgment creditor. Under these circumstances, the lien of the judgment creditor is superior to the rights of the complainant.—See *Daniel v. Sorrells*, 9 Ala. 439; *Ohio Ins. Co. v. Ledyard*, 8 Ala. 870.

The complainant can not stand in a better light than a purchaser or mortgagee, under an unrecorded deed. Here the creditor acquired his lien by judgment and levy, before

there was any notice of the complainant's rights. The following cases would seem to be conclusive in this aspect of the case: *De Vendell v. Hamilton*, 27 Ala. 156; *Hardaway v. Semmes*, 38 Ala. 659.

2. But admitting that the facts set forth in the bill establish a trust, which could be enforced against the husband—a trust by implication or construction of law—still, it can not be enforced against the creditors who have a lien by judgment and levy. The statute (§ 1590 of Rev. Code of Alabama) declares, that " no trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney, lawfully authorized thereto in writing."

And the next section (1591) declares, that " no such trusts, whether implied by law, or created or declared by the parties, can defeat the title of creditors, or purchasers for a valuable consideration, without notice."

Now, what is the meaning of the rather singular expression, " title of creditors," as used in this section ?

It is clear, that the section contemplates *both* the title of *a purchaser for value without notice*, and also the rights of creditors. It may be that the creditors whose rights are to be protected against these secret trusts, are general creditors, whose debts were created before notice of the trust, as in the case of *Hardaway v. Semmes*, 38 Ala., *supra*. But whether this be so or not, it is certain, if *any creditors* are to be protected, those who have acquired *liens* by judgments and levies, before notice of the trust, would be protected ; or otherwise, the words " title of creditors " would be meaningless.

A mortgage creditor with a mortgage is a purchaser for value, and would be included in the other clause of the statute.—*Morrow v. Wells*, 36 Ala. 129. Under the registration statutes, where the term " creditors " is used, it has frequently been declared, it means creditors with a *lien*. See, also, *Fash v. Ravesies*, (32 Ala. 451,) which would seem to settle the matter.

3. We insist, that under the facts set forth in the bill, the

complainant has no *equitable lien*. The *purchase* of the land
by Robison, the husband, was made more than one year
before the advancement of any of the money. His right
to have a title under this purchase was complete, depend-
ent alone on the payment of the purchase-money. It is
well settled, under such circumstances, that there is no
*resulting trust*, or *any trust by implication or construction of
law*. In order to create such a trust, the money must be
advanced *at the time* of the *purchase*.—See *Foster v. Ather-
man*, 3 Ala. R.; *Roper v. Roper*, 29 Ala. R.; *Steese v. Steese*,
5 Johns. Ch. p. 19; *Botsford v. Burr*, 2 Johns. Ch. 409,
marg. page.

The statute of frauds (and the section 1590 of the Code
of Alabama) show clearly that the trust here attempted to
be set up could be enforced against Robison, the husband
of complainant, because it is not such a trust as is ex-
cepted by the law from the operation of the statute of
frauds and the section 1590 of the Revised Code.

The use of the terms in this section, trusts created " by
construction or implication of law," had a well defined
meaning, and to extend the right to introduce parol testi-
mony, to establish such a trust as is here attempted, would
be to abrogate the statute of frauds.

The husband was clearly an incompetent witness for the
wife at common law or in equity.—1 Greenl. § 334 ; Gres-
ley's Eq. Ev. page 40, bottom of page ; *Wilson v. Shepherd*,
28 Ala. 623. The incompetency was both on the ground
of *interest*, and also on the ground of *public policy*.—See
1 Greenl. § 334; 28 Ala. 623.

If there has been any change of these principles, it is a
change in derogation of common law, and must be *strictly
construed*.—*Kirksey v. Dubose*, 19 Ala. 43 ; *Zackowski v.
Jones*, 20 Ala. 189 ; *Nation v. Roberts, ib.* 544. That is, no
change will be implied or presumed, beyond the clear lan-
guage of the act making the change ; but all presumptions
are the other way—that is, that no change was intended
but the one provided for in terms by the act.

What change has been made, then, as to the competency
of witnesses ? The only change made, is that found in
section 2704 of the Revised Code. And this removes in-

competency on the ground, first, of being a *party*, and secondly, on the ground of *interest*. This section provides, that "in suits, &c., there must be no exclusion of any witness, because he is a *party* or *interested* in the issue tried." The language is plain and explicit—there is no room for doubt or misconstruction. The general principles of the law declare, that witnesses are incompetent because of interest in the suit, because they are parties to the suit, or because of *public policy* under certain circumstances—as when the witness is a husband or wife, or an attorney, having confidential communications as such, &c. Now, these causes are separate and distinct grounds of incompetency, either of which may be removed and the other remain. It was competent for the legislature to remove the ground of incompetency as to a *party*, or as to *interest*, or as to *public policy*, and let the others remain, or to remove any two of the grounds, and let the other remain. And this is precisely what they have done, and no more nor less. They declare that neither *interest* or being a *party* shall not exclude, but they leave the exclusion on the ground of *public policy* as it was ; and it still excludes all who were ever incompetent on this ground, whether husband or wife, or attorney, or a judge presiding on a case. And as well might it be contended that an attorney could, under this statute, disclose the secrets of his clients, as that the statute invades the sanctity of the marriage relation, and prostrates this great principle of *public policy*. The deposition of this witness should, therefore, have been excluded.

H. A. HERBERT, for appellee.

[Appellee's brief did not come into Reporter's hands.]

B. F. SAFFOLD, J.—The bill was filed by Frances W. Robison against her husband, Lodowick Robison, and Boyles & Milner, his judgment creditors, to establish a resulting trust in her favor of a certain tract of land. She charged that the land was sold on the 3d of December, 1860, by Allen Hawkins, as administrator of Wiley Hawkins, deceased, and bid off by her husband, who gave his

own notes, due twelve months after date, for the purchase-money. These notes were paid with money of her separate estate derived from her father. Her mother, as executrix of his estate, advanced the money to her husband, Lodowick, who was unable to pay, under an express agreement with him, that he was to apply it to the payment of the debt for the land, and the land was to be her daughter's, the complainant, to constitute so much of her distributive share of her father's estate. The money was so applied, and the land paid for, but her husband took the deed in his own name on the 26th of January, 1863, after payment had been fully made, but she did not know this until subsequently. On the 22d of March, 1867, Boyle & Milner, as surviving partners of Smith, Boyle & Co., recovered a judgment against Lodowick Robison. The land was sold under an execution issued on this judgment, and purchased by Boyle & Milner, as surviving partners, with knowledge at the time of the sale of the complainant's equity.

The bill was demurred to by the defendants, Boyle & Milner, for want of equity, and for misjoinder of parties, by making the widow and children of the deceased partner, Smith, parties defendant. Their answer, not under oath, denied the allegations of the bill. The answer of Robison admitted the charges.

Those only who are improperly joined can demur for misjoinder of parties defendant. Where the objection of want of interest applies to a defendant, it is fatal to the suit only against the defendant improperly joined.—Story's Eq. Plead. §§ 544, 530, 232.

A motion to suppress the testimony of Lodowick Robison, on the ground that the husband can not be a witness for his wife, was overruled. Section 2704, of the Revised Code, removes the incompetency of witnesses because of interest or being parties to the suit in civil cases. The general rule, excluding husband and wife from being witnesses for or against each other, is founded, partly on their identity of interest, and partly on the necessity of guarding the security and confidence of the marriage relation.

The objection of interest applies more particularly to

their being witnesses in favor of each other, and the other, to their being witnesses against each other.—Phil. Ev. vol. 1, p. 69.

The exceptions to this rule are, where, from the nature of the inquiry, the information to be expected is peculiarly within the knowledge of the husband or wife, and where, to exclude such evidence, would occasion insecurity to that relation of society which it is the object of the rule to protect.—*Ib.* 78.

The section of the Code referred to, removes the objection of interest, and being a party to the suit, leaving ·for consideration only that of public policy.

In cases where the reason of the rule does not apply, it has been the practice of the courts to make it yield to the demands of justice. Where the wife acts as her husband's agent, her declarations have been admitted in evidence to charge him.—2 Kent's Com. 179. Where the husband and wife had agreed to articles of separation, and a third party became a party to the agreement as the wife's trustee, and provision was made for her maintenance and enjoyment of separate property, the declarations of the wife relative to her acts as agent were admissible in favor of her husband against the trustee.—*Fenner v. Lewis*, 10 Johns. R. 38.

In an action by the husband on a policy of insurance on the life of the wife, the husband having introduced the surgeon who examined her as a witness of her good health, who testified that his opinion was partly formed from her answers to his questions respecting her health, the defendant was permitted to give in evidence her declarations to another person about the same time, of her poor state of health at the time of, and soon after the examination by the surgeon. Lord Ellenborough said, " no confidence had been violated ; nothing extracted from the bosom of the wife which was confided there by her husband. The·admission of the evidence is free from the imputation of breaking in upon the confidence· subsisting between man and wife." Grose, J., said "such declarations are admissible, not so much as evidence of confessions of the wife against her husband, as of the actual state of her health, in her own opinion, at the time." Lawrence, J., said, "The

ground of objection was, the account given by her went to criminate her husband, by showing him guilty of fraud, but that does not follow."—*Aveson v. Kinnaird*, 6 East, 188. Where a man was tried on an indictment for a forcible marriage, the wife was received as a witness for her husband to prove that the elopement and marriage were voluntary.—Bristol Assizes, 1794; Mac. Nally's Ev. 181, note 70, p. 78; Phil. Ev.

These decisions were made at a time when the identity of the wife, in the presumption of law, was merged almost entirely in that of the husband. A stricter rule should not now be observed when her individuality is being recognized, and her responsibility, at least in reference to her separate property, is almost as great as that of *femme sole*. In a suit against herself her own testimony can be used for or against herself. So of her husband and of these defendants. There is no exclusion on account of relationship, no matter how near and dear, save only in the case of husband and wife. In the case under consideration the wife desires to prove by her husband what he did with the money belonging to her separate estate, which he received from her mother. The law has made him her trustee and invested him with the control of her property, of which she can not divest him, except for good cause proven. He alone knows what disposition he has made of it. No confidence of the marriage relation is involved. A trustee is merely giving an account of what he has done with the funds of his trust. To deny this right to the wife would be to place her in a worse condition than all the balance of the world. The motion to exclude the testimony of the husband was properly overruled.

The appellant contends that the sale and purchase of this land was completed in 1860, and the money was not advanced by Mrs. Christian, until some time afterwards; that no resulting trust can arise unless the money was paid at the time the land was bid off. A contract for the sale of land can not properly be said to be completely executed until the money has been paid and a conveyance delivered, though important rights and obligations become vested in the parties by the simple agreement for a sale. The ques-

tion of the existence of a resulting trust depends, not so much on the time when the money is used, as the char-acter of its receipt. A party may borrow money and ap-ply it at once to the purchase of land without the creation of a resulting trust, but if it be advanced with the inten-tion of such application, the trust will arise. In the case of *Bottsford v. Burr*, (2 Johns. Ch. Rep. 405,) Chancellor Kent said : " The resulting trust, not within the statute of frauds, and which may be shown without writing, is when the purchase is made with proper moneys of the *cestui que trust*, and the deed not taken in his name. The trust results from the original transaction, at. the time it takes place, and at no other time ; and it is founded on the actual payment of money, and on no other ground. It can not be mingled or confounded with any subsequent deal-ings whatever." " The trust arises out of the circumstance that the moneys of the real, and not of the nominal, pur-chaser, formed, at the time, the consideration of the pur-chase and became· converted into the land. In this case the question was, was the money advanced as a loan to the defendant, or as a payment *pro tanto* by the plaintiff to the vendor." In the case of *Boyd v. McLean*, (1 Johns. Ch. Rep.) the trust was established, notwithstanding the land had been sold on a credit, and the money was not paid until several years after the sale. The decisions of this court in *Roper v. Roper*, 29 Ala., and *Foster v. The Trustees of the Athenœum*, 3 Ala., are based on the authority of *Bottsford v. Burr*, above. The testimony abundantly shows that the money of the complainant was received by her husband, who was her trustee, and applied as the con-sideration for the land with the express understanding that it was to be her property. The trust arose at the moment of the application of the money, and is not affected in favor of the defendants by section 1591, Revised Code, in which the word " creditors" must be construed to mean creditors with a lien.— *Wells v. Morrow*, 38 Ala. 125 ; *Fash v. Rave-sies*, 32 Ala. 451. *Quere*,—whether it would not have arisen against such, to the extent of the money of the wife used in payment?

Mrs. Christian testified, that her daughter's slaves

were employed on the land in conjunction with her own
and her husband's, and that the husband recognized,
and the wife claimed, the proprietorship of the land.    The
possession of the husband must be referred to his repre-
sentative character, and be considered the possession of
the wife, which is equivalent to notice of her right.— *Gwynn
and Wife v. Hamilton's Adm'r*, 29 Ala. 233 ; *Michan and
Wife v. Wyatt*, 21 Ala. 813 ; Shepherd's Dig. p. 701, § 28,
title *Notice*.   The bill alleges, and the proof sustains the
allegation, that all of the purchase-money was paid out of
the wife's property.

It is unnecessary to consider the objections to the spec-
ified portions of the testimony.   The bill is sustained by
the proof independently of them.

The decree is affirmed.