# Gordon, Rankin & Co. v. Tweedy.

*Bill in Equity by Creditors to set aside Fraudulent Conveyance.*

1. *Husband and wife; competency as witnesses for each other.*—In civil cases, husband and wife are competent witnesses for each other, to prove any fact that did not come to their knowledge through the channel of the conjugal relation or which is manifestly not confidential. This embraces all matters which must have been intended by them to be made public, and the disclosure of which would not be a violation of marital confidence, or tend to engender matrimonial discord.

2. *Consideration of deed to land assailed for fraud; admissibility of parol evidence as to.*—When a deed to land, reciting a valuable consideration, is assailed for fraud by creditors of the grantor, it may be sustained by parol proof of a valuable consideration different from that expressed or recited, provided it is of the same general character, and not inconsistent with it; as the promissory notes of a third party, instead of money; or stock in a railroad corporation other than that recited in the deed.

3. *Release of dower by the wife, as consideration of conveyance to her by the husband.*—The release by a married woman of her inchoate right of dower in her husband's lands, may be a valuable consideration for a conveyance of other lands to her by the husband, whether the release is executed contemporaneously with the execution of the deed, or in pursuance of a previous agreement; but such contracts between husband and wife must be reasonable and free from fraud, in order to be sustained in a court of equity, when the husband's deed to her is attacked by creditors, and should be especially scrutinized when the husband is at the time insolvent, or in failing circumstances.

4. *Value of inchoate right of dower, when consideration for a deed; how estimated.*—In a suit in equity by creditors of the husband to have a deed to land, executed by him to his wife, set aside as fraudulent and void, standard annuity tables, founded in human experience and observation, furnish the proper rule by which the court should ordinarily be governed in computing the probable value of the wife's inchoate right of dower in lands, conveyed by the husband to a third party, the release of which forms a part of the consideration of the deed to her, which is assailed by the husband's creditors; but in no event should the value of the dower interest exceed one-sixth of the value of the lands.

5. *Deed assailed for fraud; burden of proof on grantee.*—When a conveyance is assailed by creditors of the grantor on the ground of fraud, the burden of proof is on the grantee to establish the existence, the amount, and the validity of the recited consideration.

6. *Transfer of stock in a private corporation; when can not be proved by parol.*—When a transfer of stock in a corporation is shown to have

[Gordon, Rankin & Co. v. Tweedy.]

been entered on the books of the corporation, it can not be proved by parol or secondary evidence, unless a proper predicate is first laid therefor.

7. *Husband's liability to the wife for interest on her statutory separate estate.*—Under the statutes regulating the estates of married women, the husband is not liable for interest on moneys belonging to the statutory separate estate of his wife which were used, or converted by him; and hence, interest thereon is not such a consideration as will support a conveyance by him to her, when assailed by his creditors on the ground of fraud.

8. *Husband's liability for interest on wife's equitable estate.*—Nor is the husband liable for interest on moneys belonging to his wife's equitable estate, which he has used or converted, in the absence of an agreement on his part to pay interest, or an express dissent on her part to the use thereof by him; and, hence, interest thereon will not support a conveyance by him to her, when assailed by creditors, in the absence of such agreement on his part, and of such dissent on her part.

9. *Inadequacy of price, a badge of fraud; when fraud will be inferred from it alone.*—Inadequacy of price is a badge of fraud; and when the inadequacy is so great as to shock the conscience—when the price is so far below the market value of the property, as to strike the understanding of an honest and intelligent man with the conviction that the sale never could have been made in good faith—fraud may be inferred from it alone; and the case is strengthened when other badges of fraud, such as the embarrassed pecuniary condition of the debtor, the pendency of suits against him, etc., are also shown.

10. *When conveyance of land fraudulent for inadequacy of consideration.*—The deed attacked by creditors of the grantor in this case, tested by the principles above stated, is held constructively fraudulent; conveying, as it does, to the wife of the grantor a tract of land worth between $4,000, and $5,000, the consideration therefor being a relinquishment by her of her inchoate right of dower in another tract, which the husband had sold and conveyed, the value of which is not satisfactorily shown, an indebtedness for railroad stock worth $485, the alleged property of the wife, which the husband had sold, and converted, the transfer of which to the wife is not proved by legal evidence, and a further indebtedness to the wife for moneys belonging to her, which he had used, and interest thereon, amounting to $646; it also being shown that at the time of the execution of the conveyance, the husband was financially embarrassed.

11. *Deed constructively fraudulent; when a security for real consideration shown.*—When a deed is fraudulent in fact, and, for that reason, void as against existing creditors of the grantor, it will not be permitted, on attack by the creditors, to stand for the purpose of re-imbursement or indemnity to the grantee; but when, as in this case, it is only constructively fraudulent by reason of inadequacy of consideration, and financial embarrassment of the grantor at the time of its execution, it may stand as a valid security for the consideration actually paid.

12. *When transfer of choses in action held free from fraud.*—It was further held in this case, that a transfer of choses in action, made by a husband, who was in failing circumstances, to his wife, was free from fraud, actual or constructive; it being shown that the transfer was based on an adequate consideration, and it not sufficiently appearing that, if there was a fraudulent intent on the part of the grantor, the grantee participated therein.

13. *Parol agreement to convey lands; when statute of frauds not applicable to.*—A parol agreement between husband and wife, by which he agreed to convey to her lands or other property, in consideration of a relinquishment of her inchoate right of dower in other lands which he desired to sell and convey, may be proved by her in support of a convey-

[Gordon, Rankin & Co. v. Tweedy.]

ance executed to her by the husband, reciting a valuable consideration, not inconsistent with that sought to be proved, as against creditors of the husband, attacking the conveyance on the ground of fraud. Such an agreement is only voidable under the statute of frauds, and the protection of the statute can not be invoked by the creditors, if the benefit thereof is repudiated by the husband.

14. *Executed contracts; statute of frauds not applicable to.*—Such agreement having been executed, the statute of frauds has no application.

15. *Earnings of the wife the property of the husband.*—At common law, the earnings of the wife during coverture belonged to the husband; and this principle is not abrogated by our statutory system.

APPEAL from Lawrence Chancery Court.

Heard before L. B. COOPER, Esquire, Special Chancellor.

The bill in this cause was filed on 27th May, 1875, by Gordon, Rankin & Co., Adams, Thorne & Co., and others, creditors of Robert E. Tweedy, against him and his wife, Harriet O. Tweedy, for the purpose of having set aside and cancelled, as fraudulent and void, a deed executed by Robert E. Tweedy to his wife, of date 13th November, 1873, conveying to her a certain tract of land in Lawrence county, particularly described, and containing about three hundred and twenty-eight acres; and certain assignments and conveyances of personal property, consisting of horses, mules, cows, etc., and of a large number of notes, accounts and other choses in action, mortgages and liens, alleged to have been made and executed by him to her; and for the purpose of pursuing certain moneys, alleged to have been paid by him to her, into property purchased with such money; and for the purpose of subjecting to sale for the payment of complainants' demands, the property so conveyed, transferred and purchased, as well as a certain other tract of land, alleged to have been sold and conveyed by one Harris to Mrs. Tweedy "in satisfaction of a debt which he owed said Robert E. Tweedy." The bill also seeks a discovery of the property and choses in action conveyed and assigned by him to her, and of the money realized therefrom, or collected thereon, and of the amount of money which he had paid to her. The bill charges that, at the time of the execution of the several conveyances and assignments, Robert E. Tweedy was insolvent; that said conveyances and assignments were without valuable consideration, and were executed and accepted for the purpose of hindering, delaying and defrauding the complainants, and the other creditors of the said Robert E. Tweedy. The indebtedness of Robert E. Tweedy to the complainants aggregated a sum exceeding $10,000, on most of which judgments had been obtained prior to the filing of the bill. It is not averred or shown, however, when the several suits at law were commenced; the only testimony on this point being that he "was sued in the latter part of 1873," and that some of his debtors

[Gordon, Rankin & Co. v. Tweedy.]

were garnisheed in February, 1874; but some of the judgments were obtained in the early part of 1874, and the others in the latter part of that year. The complainants' demands, however, were contracted prior to the 13th November, 1873, and a large portion of them matured before that date. A copy of the deed from Robert E. Tweedy to his wife, of date November 13th, 1873, is made an exhibit to the bill. The consideration of the deed, as recited therein, is the following items of indebtedness owing by him to her, to-wit: (1) $315, the proceeds of the sale of thirty shares of "N. & Chattanooga R. R. stock," and $170, the proceeds of the sale of seventeen shares of "M. & C. R. R. stock," which stock belonged to Mrs. Tweedy, "as part of her separate estate," and had been sold by him, and the proceeds applied to his own use and benefit; (2) $646, a sum theretofore received by him as part of the distributive share of his wife in the estate of her father, which he had also applied to his own use and benefit; and (3) the release by Mrs. Tweedy of her inchoate right of dower in a certain tract of land, in Lawrence county, containing twelve hundred and eighty acres, his interest in which he, as one of the firm of Tweedy, Houston & Co., had conveyed, on 19th March, 1870, for a valuable consideration, to Houston & Bynum. It is further recited that this right of dower was an obstacle to the making of a perfect and complete title, and that Robert E. Tweedy promised his wife, that, if she would release it, he would thereafter purchase other lands of equal value to her right of dower in said tract, and have the title thereto conveyed to her; and that thereupon she released it.

As required by the bill, the defendants answered under oath, each separately. They admit the execution of the deed of 13th November, 1873, and aver that the consideration therefor was as is recited therein. It is also stated in the answer of Robert E. Tweedy, and substantially reiterated in his wife's answer, that "the amount of $315, proceeds of sale of thirty shares of N. & C. R. R. Stock, and $170, proceeds of sale of M. & C. R. R. stock, are the correct amounts of money belonging to the separate estate of respondent's wife, received and used by him on 5th November, 1872, *including interest to November 13th, 1873*, the date of the said conveyance. On September 1st, 1869, respondent received from the estate of H. C. Featherstone, father of H. O. Tweedy, $600, being part of her distributive share in the said estate, and, at the same time, with her consent, he retained the same upon loan and applied it to his own purposes. This, *with $46 interest thereon to November 13th, 1873*, makes the sum of $646, as stated in the said deed." They also aver that Mrs. Tweedy's right of dower in the tract conveyed to Houston & Bynum was worth $2,000.

[Gordon, Rankin & Co. v. Tweedy.]

They admit that in January, 1874, Robert E. Tweedy assigned to his wife an account due him from R. N. Harris for $675.75, and, on 4th February, 1874, an account due him from Gibson & Co., for $1,667, and a note made by W. C. Sherrod for $1,053, dated January 1st, 1874, and payable to him one day after date; but they deny that he ever transferred or assigned to her any other choses in action, or any other personal property whatever. Certain debts which Robert E. Tweedy owed his wife, it is averred in both answers, constituted the consideration for the assignment of these choses in action. These debts are averred to be as follows: (1) Proceeds of the sale of a carriage owned by Mrs. Tweedy, as "a part of her separate estate," made by him on 1st October, 1865, which he retained with her consent as loaned money, and appled to his own use, $500, and interest thereon to 4th February, 1874, $333.30; (2) money borrowed by him from her on 1st January, 1866, which also belonged to her "as part of her separate estate," $1,672, and interest thereon to 4th February, 1874, $1,000.24; (3) moneys received by him on 1st February, 1866, on her distributive share in her father's estate, which he also applied to his own use, $250, and interest thereon to 4th February, 1874, $160; (4) proceeds of the sale of a buggy owned by Mrs. Tweedy "as part of her separate estate," collected by him on 1st January, 1870, and by him retained with her consent as money borrowed from her, and applied to his own use, $455, and interest thereon to 4th February, 1874, $145; and (5) the sum of $3,000, which, it is averred, he owed her in consideration of a relinquishment of her right of dower, made by her on 4th February, 1874, in two certain tracts of land, situate in Limestone county, one of which, containing seven hundred and twenty acres, he sold and conveyed to James Trabue, and the other, containing one hundred and sixty acres, he sold and conveyed to Wheat & Chesney, both in payment of debts which he severally owed to said grantees. It is further averred that Mrs. Tweedy was unwilling to join her husband in the execution of these deeds, but finally did so, on his promise to "indemnify" her to the amount of $3,000, and, in payment of that sum, and the other debts which he owed her, to transfer to her "good claims or property" to the amount thereof; and that $3,000 was a fair and reasonable valuation of her dower interest in said lands.

The defendants, in their answers, also admit that Mrs. Tweedy purchased from R. N. Harris a certain tract of land, particularly described, which lies contiguous to the lands conveyed to her by her husband, by the deed of November 13th, 1873, at and for the sum of $3,500, one-third of which by the terms of the sale, was to be paid on 1st January, 1875, and the balance, with interest, on 1st January, 1876. The first install-

ment of said purchase-money she paid, partly by a balance due from Harris on the account which he owed her husband, and which had been transferred by him to her, as above stated, and partly in money belonging to her.   The balance of the purchase-money had never been paid, and no deed to the land had been executed to her by Harris.

They also admit that Robert E. Tweedy paid to his wife, on 1st April, 1874, $1,600, in money, and aver that this amount was paid to her in part payment of what he owed her.   They positively deny that there was any fraud in the several transactions above mentioned, and aver that they were all made in good faith.   Robert E. Tweedy also denies that he was insolvent or in failing circumstances on 13th November, 1873, but avers that he was then engaged in a flourishing mercantile business, that his credit was then good, and that he met his pecuniary engagements as they matured "to the entire satisfaction of merchants with whom he was dealing."   He further denies that he "considered himself insolvent" on 4th February, 1874, and avers that he then considered his assets fully sufficient to meet all his liabilities, and that such would have been the case, had it not been that "he was subsequently prevented by untoward circumstances from collecting the claims due him." Both he and Mrs. Tweedy deny that she, at the dates of said transactions between them, or prior thereto, had any knowledge, or information leading her to believe, that he was then insolvent, or in embarrassed pecuniary circumstances.

The evidence introduced on behalf of the complainants tended to show, among other things, that, during the year 1873, and prior thereto, Robert E. Tweedy was engaged in a large mercantile business in the town of Courtland, in this State; that the larger portion of his sales were on credit; that on 13th November, 1873, he was financially embarassed, if not insolvent, and his creditors were pressing him for payment; that in January, 1874, he sold his stock of goods, which had been greatly diminished, to one of his creditors for $800, in payment of a debt, and then ceased business; that thereafter, during the years 1874 and 1875, up to the time of the filing of the bill in this cause, he and his wife were living on the tract of land bought by her from Harris, and that they were farming thereon, as well as on the tract conveyed to her by his deed of November 13th, 1873; that both tracts had been improved after they were acquired, on the Harris tract a dwelling-house having been erected; and that certain personal property, plantation supplies, etc., had been purchased in the name of Mrs. Tweedy, and she was in possession of such personal property.   It was also shown that Robert E. Tweedy purchased the land which he conveyed to his wife by the deed of November 13th, 1873,

from George W. Foster, on 8th November, 1873; and his deed from Foster was read in evidence. That deed recites its consideration to have been $6,560, to him "in hand paid," etc. This land was also shown to have been then worth from $10 to $15 per acre.

The depositions of the defendants were read in evidence on their behalf. To the introduction of these depositions the complainants separately objected, on the ground that the witnesses were husband and wife, and, therefore, incompetent; but the chancellor overruled their objections. Their testimony touching the facts necessary to an understanding of the opinion, except as hereinafter stated, is substantially set forth in the foregoing statement of the contents of their answers. Robert E. Tweedy further testified that he purchased the land which he conveyed to his wife by the deed of November 13th, 1873, from George W. Foster, jr., to whom his father, George W. Foster, sr., had given it, and received a deed therefor from the latter "to save the trouble of making two deeds in place of one;" that he paid for this land in an account of $800 which George W. Foster, sr., owed him, and in debts of George W. Foster, jr., part of which had been contracted with, and was owing to witness, and the balance he bought up at fifty cents on the dollar, the face of the paper which went in payment for the land being about $6,500; that George W. Foster, jr., was then insolvent, and witness did not consider the debts against the younger Foster worth as much as fifty cents on the dollar. The complainants objected to the testimony of the witness in reference to the consideration of the Foster deed, on the ground, among others, that it established a different consideration from that expressed in the deed. This objection was overruled by the chancellor. Mr. Tweedy further testified that this land was not worth more than $3,000 when Foster conveyed it to him, and when he conveyed it to his wife. He further testified that the deed by him to his wife recited the true consideration paid him by her for the land, except that there was a clerical error in the recital of the indebtedness of $315, the proceeds of the sale of thirty shares of "*N. & Chattanooga R. R. stock*;" that that item of the consideration was in fact the proceeds of the sale of *Nashville & Decatur R. R. stock*, which she had acquired from her father's estate; that the seventeen shares of the Memphis & Charleston Railroad stock mentioned in the deed, was stock purchased from one McMahon in 1869, but was not transferred until August, 1870; that he gave this stock to his wife, and when the transfer was made on the books of the company, it was made by his direction to his wife, and that when the property was sold, it was sold as her property, and the proceeds applied to his own use. It was further shown

VOL. LXXI.

[Gordon, Rankin & Co. v. Tweedy.]

by this witness that his promise to convey lands and other property to his wife in consideration of her releasing her dower interest in the lands cónveyed by him to Houston & Bynum, and to Trabue and Wheat & Chesney, were not in writing. The complainants objected to that part of his tesimony in reference to these promises, on the grounds, (1) that such promises were not in writing, and (2) because the effect of the testimony as to the promise in reference to the lands conveyed to Houston & Bynum was to establish a different consideration for the deed of November 13, 1873, from that expressed therein. They also objected to "his proving any transfer of any railroad stock to his wife, on the ground that the transfer was in writing, and the testimony offered was secondary. The chancellor overruled these several objections. He further testified that his interest in the lands which he conveyed to Houston & Bynum was worth over $5,000; that his wife relinquished her dower in said lands in consideration of his paying her "$2,000 in other property;" that his opinion was that his "wife's expectancy of dower in this land was worth $2,000, or more;" and that he was then "a man in good health and stout."

Mrs. Tweedy, in her deposition, testified, that the claim on Gibson & Co., which her husband transferred to her, was afterwards settled by her taking the note of E. C. Ashford, a surviving partner of Gibson & Co., but that the note had never been paid. And on cross-examination touching property which, as she testified, she had purchased, she stated that she had made $250 taking boarders, but it is not shown when she made this money. Both she and her husband explain how she acquired the $1,672 which, as they testify, and allege in their answers, he borrowed from her in 1866, and which formed a part of the indebtedness supporting the assignment made on 4th February, 1874, and the payment made by him to her in April, 1874. They also examined as a witness O. H. Bynum, whose testimony tended to show, that W. C. Sherrod was very much embarrassed financially in February, 1874, and that his paper was not then worth more than fifty cents on the dollar.

On the hearing, had on pleadings and proof, the chancellor was of the opinion that the several transactions between the defendants were shown by the evidence to have been free from fraud and based on a valuable consideration, and caused a decree to be entered, dismissing complainants' bill. That decree and the rulings on the evidence, noted above, are here assigned as error.

John Phelan and Joseph Wheeler, for appellant.

R. O. Pickett, contra.

[Gordon, Rankin & Co. v. Tweedy.]

SOMERVILLE, J.—It is now settled by the past decisions of this court, since the act removing, with certain exceptions, all disqualification based on the fact of being a party to a suit, or interested in the issue tried, that, in *civil* cases, husband and wife are competent witnesses for or against each other, to prove any fact which did not come to their knowledge through the channel of the conjugal relation; or, in other words, any transaction which is manifestly *not confidential.* This rule would clearly embrace all matters which must have been *intended* by them to be made public, the disclosure of which would be no violation of marital confidence, or tend to engender matrimonial discord. And such seems generally now to be the settled weight of authority also in other States.—*Chapman v. Holding,* 60 Ala. 522; *Sumner v. Cook,* 51 Ala. 521; *Rowland v. Plummer,* 50 Ala. 182; *Robison v. Robison,* 44 Ala. 227; *Stuhlmuller v. Ewing,* 39 Miss. 447; *Crook v. Henry,* 25 Wis. 569; 1 Greenl. Ev. § 337; 1 Whart. Ev. §§ 428–431. The chancellor did not err in admitting the deposition of the appellee, Tweedy, or that of his wife.

When a deed or other conveyance is assailed for fraud, it is competent to sustain its validity by parol proof of any consideration other than that expressed, provided the two considerations be *consistent,* or of the same general character. It did not vary the legal effect of the deed from Tweedy to his wife to show that a portion of the consideration was the proceeds of the sale of certain stock in the Nashville & *Decatur* Railroad Company, though recited to be stock of the Nashville & *Chattanooga* Railroad Company. So the notes of Foster were as much a valuable consideration as the money consideration recited in the deed which was executed by him to Tweedy. The evidence as to the real consideration of these instruments was properly admitted.—1 Whart. Law Ev., §§ 1046–1047; *Mead v. Steger,* 5 Port. 498; *Hinde v. Longworth,* 11 Wheat. 199; *Hair v. Little,* 28 Ala. 236; 1 Parsons Notes & Bills, 194; *Ramsey v. Young,* 69 Ala. 157.

The release by a married woman of her inchoate or contingent right of dower in lands owned by her husband, of which she is lawfully dowable, may constitute a valuable consideration for the execution of a deed by him to her. And the same is true, whether the release be made contemporaneously with the deed, or pursuant to a preceding agreement.—*Hoot v. Sorrel,* 11 Ala. 386; Bump on Fraud. Con. 303; *Bank of U. S. v. Lee,* 13 Pet. 107. Yet such a contract must be reasonable and free from fraud in order to be sustained in equity, and should be especially scrutinized, when made to a wife by a husband who is insolvent or in failing circumstances.—2 Scribner on Dower, 7–8; *Quarles v. Lacy,* 4 Munf. 251; *Burwell's*

[Gordon, Rankin & Co. v. Tweedy.]

*Ex'r. v. Lumsden*, 24 Gratt. 443; S. C. 18 Amer. Rep. 648. We are of the opinion that the deed bearing date November 13, 1873, executed by the appellee, Tweedy, to his wife, is, under all the facts of this case, constructively fraudulent, and can not be sustained. The lands conveyed by this deed had been purchased from one Foster, but a few days before, upon a recited consideration of over sixty-five hundred dollars. Making due allowance for the fact that they were partly paid for in Foster's own paper, purchased at fifty cents on the dollar, it is a fair inference, from all the testimony, that they were worth not less than four or five thousand dollars. We deem the consideration of the conveyance to be grossly inadequate. It is recited to be the proceeds of certain railroad stock alleged to belong to the wife which, the testimony shows, sold for the sum of four hundred and eighty-five dollars; the further sum of six hundred and forty-six dollars received as a part of the distributive share of Mrs. Tweedy in her father's estate and used by the husband; and the release by the wife of her *contingent dower interest* in certain lands, the value of which is not stated. What the value of these lands was, or that of the wife's right of dower in them, does not clearly appear from the testimony taken in the cause. The appellee, Tweedy, estimates the lands as worth about five thousand dollars, and the inchoate right of dower at *two thousand dollars*, which latter sum, he testifies, was the amount agreed to be paid for the wife's relinquishment.

The right of dower is, of course, merely contingent, being dependent upon the wife's good behavior, and the further fact of her surviving her husband. And while it is a valuable interest, which was the subject of conveyance by fine at common law and by deed with us, it is more or less valuable according to the ages, state of health, and even the habits of the husband and wife.—*Bullard v. Briggs*, 7 Pick. 533; Code, 1876, § 2470. And, under the provisions of our statutes, the right may be barred entirely, should the statutory separate estate owned by the wife at the time of the husband's death be equal to, or greater in value than her dower interest.—Code, 1876, §§ 2715–2716. The statute further provides, in cases where lands of a decedent are sold by order of the probate court, and the widow consents to have her dower interest sold with them, that the value of the dower right shall be "ascertained by proof, having regard to the age and health of the dowress," but it shall in no case be estimated at more than "*one-sixth* of the purchase-money."—Code, 1876, §§ 2470–71. When the right is inchoate, as of necessity it is before the death of the husband, it can not be so valuable as after his death, because it is contingent and may be defeated by the death of the wife, or the forfeiture of it by her misbehavior. Standard annuity

[Gordon, Rankin & Co. v. Tweedy.]

tables, founded in human experience and observation, furnish the proper rule by which chancery courts are ordinarily governed in computing the probable present value of such a contingent interest.—1 Scribner on Dower, 333; 2 *Ibid.* 6; *Jackson v. Edwards*, 7 Paige, 386, 408–410; *Bartlett v. Vanzandt*, 4 Sandf. Ch. 396. The case of *Beavers v. Smith*, 11 Ala. 20, announces no principle in conflict with this rule. The question there was the proper valuation of a vested dower interest, not a contingent or inchoate one. And though held by this court in *Martin v. Wharton*, 38 Ala. 638, that such an inchoate right of dower was not available as a set-off under the statute, on the ground that it could not be measured with sufficient accuracy by any pecuniary standard, we apprehend that the powers and machinery of a court of equity are for the purpose here sought fully adequate to this end, at least by approximation. It is known that in modern times, characterized among other things by the rapid growth of the business of life insurance, it has become a common thing for actuaries to calculate values of this contingent nature upon the basis of standard annuity tables, and tables of mortality giving the probable duration of human life at every age. And this duty being here imposed by the requirements of this case, we know of no other possible way of determining such valuation than by the rule we have announced.—*Jackson v. Edwards*, 7 Paige, 386, 408.

The appellees in this case have failed to furnish any sufficient data in the testimony, by which we are enabled to ascertain the value of the wife's interest in the lands in which she relinquished her dower. The conveyance being assailed as fraudulent, the burden of proof was cast upon the grantee to prove the existence, amount and validity of the recited consideration. *Hamilton v. Blackwell*, 60 Ala. 545. In the absence of such proof we can not regard this portion of the consideration.

So the wife's right to the railroad stock is not established by proper evidence of its transfer, and the proof of this portion of the consideration also fails. Such transfer appears to have been made in writing upon the books of the company, and upon this muniment of title the defendant relied. Secondary, or parol evidence, therefore, of this fact was not permissible, unless a predicate had first been laid for its introduction. 1 Whart. Ev., § 61–63.

Neither can *interest* be estimated as a lawful or valuable consideration. The husband is not accountable, under the statute, for the rents and incomes of the wife's *statutory* separate estate, which includes interest on her moneys used or converted by him. It was held by this court in *Earl & Lane v. Owens*, 68 Ala. 171, that a conveyance made by a husband to secure to the wife such rents or incomes, which he had converted to his

own use, was voluntary and void as to existing creditors, thus overruling the contrary principle decided in *Brevard v. Jones*, 50 Ala. 241.   Nor can interest be allowed the wife for the use or conversion by the husband of her *equitable* separate estate, in the absence of an agreement to pay such interest, or of an express dissent on the wife's part objecting to the husband's reception of the same.—*Roper v. Roper*, 29 Ala. 247; *Newlin et al. v. McAfee*, 64 Ala. 357.

Inadequacy of price is usually denominated a badge of fraud, and it is often asserted that no fixed rule can be declared, by which to determine what disparity between the real value of property and the consideration paid will vitiate a conveyance for fraud.   We think it settled, however, that fraud may be inferred from the inadequacy of the price alone, where it is so great as to shock the conscience.   This must be the case where the consideration is so far below the market value of the property as to strike the understanding of an intelligent and honest man with the conviction that such a sale could never have been made in good faith.—Bump on Fraud. Convey. 44; *Hoot v. Sorrell*, 11 Ala. 386; *Prosser v. Henderson*, 11 Ala. 484.   The case is of course strengthened when there are other badges of fraud, such as the financial embarrassment of the grantor, the pendency of suits against him, a secret trust in his favor or other like circumstances of suspicion, some of which appear in this case.   The application of the above principle, as made to the particular state of facts presented in *Hoot v. Sorrell, supra*, does not meet with our approval.

The deed of Tweedy to his wife, however, may not be fraudulent in fact so as to render it absolutely void.   Were such the case, it could not be permitted to stand as security for any purpose of re-imbursement or indemnity to the grantee, but the rule is considered otherwise with "a deed obtained under suspicious or inequitable circumstances, or which is only constructively fraudulent."   In the latter case a conveyance may be made to stand as security for the consideration actually paid. *Boyd v. Dunlap*, 1 John. Ch. Rep. 478; Bump on Fraud. Convey. 288; *Potter v. Gracie*, 58 Ala. 303.

There is no force in the objection urged to the parol evidence of the appellee, Tweedy, allowed by the chancellor for the purpose of proving his agreement to convey to his wife other lands or property, in consideration of her relinquishment of dower in the lands sold to Trabue and others.   The contract was perhaps only voidable and not absolutely void under the statute of frauds, and the protection of this statute could not be invoked by a third party, if its benefit was repudiated by the party sought to be charged.   This defense, under our rulings, is required to be specially pleaded, or else it is consid-

ered as having been waived.—Browne's Stat. Frauds, § 135 ; *Garrett v. Garrett*, 27 Ala. 687. Besides, this statute has no application in cases where a contract has been *executed*, as in this case.—Browne's Stat. Frauds, § 116.

We do not see that the chancellor erred in decreeing that the transfer of the note of Harris, that of Gibson & Co., or of Sherrod, was free from fraud. If there was a fraudulent intent on the part of Tweedy, the grantor, it does not sufficiently appear that Mrs. Tweedy, the grantee, participated in it.—*Marshall v. Croom*, 60 Ala. 121.

Nor do we feel authorized to reverse his findings as to the sixteen hundred dollars paid by the appellee to his wife. If there was no fraud in the payment of this money, there was no right on the part of creditors to pursue the fund into the property it was invested.

At common law the husband was entitled absolutely to all the property which the wife acquires by her skill or labor. He can not renounce his right to such services or earnings to the prejudice of existing creditors.—Bump on Fraud. Convey. 248. And there is nothing in our statutory system to abrogate this principle.—*Glaze v. Blake*, 56 Ala. 379. The husband was entitled to the earnings of Mrs. Tweedy referred to in the testimony.

We think the chancellor erred in dismissing the bill in this case. It should have been retained, and the case referred to the register for an account to be taken, showing the amount of Tweedy's indebtedness *bona fide* to his wife, and allowing by way of credit such sums paid her in good faith and authorized by the views expressed in this opinion. No interest, however, can be allowed the wife on any sums constituting her statutory separate estate, and none on amounts constituting her equitable separate estate without clear proof of an express contract to pay it.

The lands conveyed to his wife by the appellee on Nov'r 13, 1873, should be decreed to stand as security only for the fair value of the contingent dower interest, which will be ascertained, on the reference, by data furnished by standard annuity tables, not to exceed in any event one-sixth of the value of the land, and for such other items of the recited consideration as may be shown to be legal and proper under the proof offered, as tested by the above principles. Mrs. Tweedy must also be charged a reasonable amount for rent of the premises from the time of the filing of the bill, and credit for the value of permanent improvements, made by her, and for taxes paid during the period of her *bona fide* occupancy or possession of the premises in question.—*Potter v. Gracie*, 58 Ala. 303; Trial of Titles to

[South & North Ala. R. R. Co. v. Wood.]

Land (Sedgw. & Waite), §§ 694–702; *Horton v. Sledge*, 29 Ala. 478.

The decree of the chancellor is reversed, and the cause remanded for further proceedings in accordance with this opinion.