<table>
<tr><td>90</td><td>325</td></tr>
<tr><td>96</td><td>622</td></tr>
</table>

<table>
<tr><td>90</td><td>325</td></tr>
<tr><td>138</td><td>613</td></tr>
</table>

<table>
<tr><td>90</td><td>325</td></tr>
<tr><td>143</td><td>198</td></tr>
</table>

# Troy Fertilizer Co. *v.* Logan.

*Action on Common Counts, with Special Count for Breach of Contract of Employment.*

1. *Admissibility of letter as evidence, without proof of signature.*—A letter sent and received through the post-office, purporting to be signed by the president of the defendant corporation, addressed to the plaintiff, and accepting the terms of employment proposed by him, is admissible as evidence for him without proof of the writer's signature, when he sues to recover the stipulated compensation, and it is shown that he entered on the employment, and performed services under it.

2. *Evidence of temper, as relevant to question of competency.*—The fact that plaintiff, suing to recover compensation for his services while in the employment of the defendant, "was a high-tempered or fractious man," is not, of itself, relevant to the question of his competency for the employment.

3. *Opinion of witness as to person's competency for business in which he is employed.*—Plaintiff having been employed by defendant as superintendent of a manufacturing business, in which other persons were subject to his control, and suing to recover his compensation as stipulated, a witness for defendant can not be asked, "whether or not, in his opinion and judgment, pla ntiff was a good man to manage hands."

4. *Evidence as to effect and operation of machinery while used by plaintiff, compared with use by another person.*—The fact that the machinery used by plaintiff, while superintending the business of the defendant corporation, did not operate so well as when used by an-

[Troy Fertilizer Co. v. Logan.]

other person in the employment of another corporation, is not admissible as evidence for the defendant, in an action by plaintiff to recover compensation for his services.

5. *Admission, or conversation; rule as to garbling.*—When part of an admission or conversation, to the prejudice of a party, has been offered in evidence against him, he has the right to call for the whole of it, though all parts may not be equally worthy of credit.

6. *Testimony of wife, as witness for husband.*—The wife may testify, as a witness for her husband, to a conversation had in her presence between him and a third person, such testimony not coming within the rule which governs confidential communications between husband and wife.

7. *Contract of employment; care and skill of employee; right of employer to discharge; waiver or condonation of defective service.*—Under a contract of employment in a business requiring special skill, the person employed impliedly stipulates that he can and will perform his duties with at least an ordinary degree of skill, and his failure to discharge them with reasonable skill and diligence justifies his discharge; but, if the employer, having ascertained the employee's want of proper skill, fails to discharge him for that cause, he will be regarded as having waived this implied breach of contract, and can not set up such want of skill, or defective service, in defense of an action for wages earned.

8. *Same; retention of employee as waiver; question of law or fact.* The retention of the employee in the business, for an unreasonable length of time, after knowledge of one or more breaches of contract on his part, is presumptively a waiver and condonation of such breach or breaches; but the question of waiver is usually one of fact for the jury, dependent on the particular circumstances of each case, though it may become a question of law for the court.

9. *Same; discharge for general incompetency.*—If the employee's want of special skill in the business is evinced by repeated acts showing his incompetency, he may be discharged on account of such incompetency, though some of such acts may have been condoned; and the jury may then look to all previous acts tending to establish his general incompetency, though some of them may have been condoned.

10. *Same; specifying grounds of discharge.*—The employer is not bound, when discharging the employee, to specify the cause or ground of dismissal; and may avail himself, in defense of a subsequent action, of any legal cause which in fact existed at the time, although he did not then know it, and although he then specified a different cause.

11. *Same; misbehavior of subordinates, as ground of quitting service.* The superintendent of a factory, or other business requiring the employment of many persons, may lawfully quit the service, if the employees under his supervising control are disrespectful and insolent to him, or are disobedient to his proper commands, without fault on his part, and the employer retains them in the service for an unreasonable time after knowledge or notice of their misconduct.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

The appellee in this case, S. H. Logan, brought two actions against the Troy Fertilizer Company, a domestic corporation, to recover wages, or compensation, alleged to be due under a contract of employment. Each action claimed $100, as one month's wages; and each was commenced in a justice's court, on the 12th November, 1888. The complaint filed in the

[Troy Fertilizer Co. v. Logan.]

justice's court, in each case, contained the common counts, and a special count for the breach of the contract of employment during the term. In the Circuit Court, on appeal, the two cases were consolidated, but no new complaint seems to have been filed. The defendant filed a special plea of tender of $51, as the balance due the plaintiff, bringing the money into court, and also pleaded the general issue; and issue was joined on these pleas. On the trial it was shown, as appears from the bill of exceptions, that the defendant was engaged in the business of manufacturing phosphates at its works in or near Troy, and also operated a cotton-seed oil mill in connection with it; that the plaintiff was employed to put the oil mill in operation, and to run it for a period of twelve months; that he entered on the service in the latter part of June, 1888, and quit, or was discharged, in September, or October, about ten or twelve days before the defendant's works were destroyed by fire. The questions in the case seem to have been, (1) whether the plaintiff was justified in quitting the employment, if he did quit it; and (2) whether the defendant was justified in discharging him, when he was discharged. The bill of exceptions purports to set out all the evidence introduced on the trial, with the exceptions relating thereto, and the charges given and refused to which exceptions were reserved, and on which assignments of error are based, The opinion of the court renders it unnecessary to state in detail all the rulings to which exceptions were reserved.

On the trial, the plaintiff produced a letter addressed to him, dated May 29th, 1888, which purported to be signed by "*O. C. Wiley, president*," in these words: "Since reaching home, we have decided to accept your proposition, viz., $100 per month for twelve months, commencing not later than the 15th July, possibly the 1st." The plaintiff testified in his own behalf, that he had a personal interview, before the receipt of this letter, with said Wiley and Dr. Tennille, the president and general superintendent of the defendant corporation, and proposed to enter the defendant's service on the terms stated in the letter; that the letter came to him through the post-office, "by due course of mail;" that he at at once came to Troy, and began to work for the defendant, "as superintendent of the oil-mill department," on the 25th June. The defendant objected to the admission of the letter as evidence, "because the signature was not proved." The court overruled the objection, and the defendant excepted. The other exceptions to rulings on evidence will be readily understood from the opinion of the court.

GARDNER & WILEY, for appellants.

W. L. PARKS, and JOHN GAMBLE, *contra.*

SOMERVILLE, J.—1. There was no error committed by the court in the admission of the letter purporting to have been written by O. C. Wiley, president of the defendant company, directed to, and received by the plaintiff in due course of mail. The only objection urged to the document is the failure to prove the signature of the writer. This was unnecessary, as the facts justified the inference that the signature was his. The terms of employment mentioned in the letter, were those previously proposed by the plaintiff, and the letter accepts these terms. The plaintiff responded to the call made in the letter addressed to him, by going from Savannah, Georgia, to Troy, Alabama, and his services were accepted. This was an implied admission by the writer of the genuineness of his signature.—1 Greenl. Ev. §§ 573a, 577.

2. It was not competent for the defendant to prove that the plaintiff "was a high-tempered or fractious man," for the purpose of showing his incompetency as an employé in defendant's service. If he dominated his temper, and made no exhibitions of it prejudicial to the defendant's interest, the bare possession of a bad temper would be totally irrelevant to any issue in the case.

3. We perceive no error in refusing to allow the witness Tennille to answer the question, "whether or not, in his opinion and judgment," the plaintiff "was a good man to manage hands?" This inquiry went to the plaintiff's competency as a superintendent of the business in which he was employed, and involved a mere expert opinion of his qualifications. The capacity to manage hands is not such a question of science and skill as that jurors would be incompetent to form a correct judgment upon it without enlightenment by expert testimony. The facts showing incapacity in this particular should have been stated, so that the jury might themselves decide the question. The witness' unknown standard of a good manager of laborers could not properly be substituted for the judgment of the jury, whose province it was to decide the plaintiff's fitness or competency in this respect.—*Moore v. Chicago Railway Co.*, 54 Amer. Rep. 26. In *Spiva v. Stapleton*, 38 Ala. 171, a witness who had seen a plantation in charge of the plaintiff frequently, was allowed to testify, as an expert, to the fact that the plaintiff, who was an overseer, "managed pretty well." The correctness of that ruling may be sustained, on the ground that the matter testified to was not a subject of ordinary,

but of expert knowledge. The evidence may be construed, moreover, to have related to the actual results of the alleged management.

4. The exclusion of the witness Wilson's testimony was equally proper, to the effect that certain machinery used in the defendant's mill, under the plaintiff's management, did not operate so well as the same machinery had done under the management of one Henderson, when it had been run by him for the Pike County Guano Company. (1) This witness is not shown to be an expert machinist. (2) There was no evidence that Henderson was a model manager. (3) The comparison between the management of the plaintiff and that of Henderson was entirely irrelevant to the issue of the plaintiff's competency as a machinist.

5. The defendant having elicited from the witness Duke a part of the conversation between him and the plaintiff, which occurred in the presence of the plaintiff's wife, Mrs. Logan, it was competent for the plaintiff to prove the whole of what was said at the same time, and relating to the same subject-matter, in order that its true meaning and import might be fully comprehended.—1 Greenl. Ev. §§ 201–202. This conversation was introduced as being in the nature of an admission; and the rule is, that the whole of an admission is to be taken together, and it can not be garbled to the prejudice of the party making it, although all the different parts of it are not necessarily to be regarded as equally worthy of credit. The motion to exclude the fourth paragraph of Mrs. Logan's deposition was properly overruled.

6. The fact testified to by Mrs. Logan, in behalf of her husband, the plaintiff, was manifestly not of a confidential character, such as should be excluded on the grounds of public policy, as violative of the confidence imposed by the conjugal relation. It was a conversation between a stranger and the husband, in the presence of the wife; and such a fact does not come within the rule of exclusion.—*Gordon v. Tweedy*, 71 Ala. 202; *Stein v. Bowman*, 13 Pet. (U. S.) 209.

The other exceptions based on the evidence are, in our opinion, without merit, and need not be discussed.

7. Passing to the most important questions of law covered by the charges of the court, we think the following propositions may be safely asserted: An employè who professes to be capable of serving in a business requiring special skill, impliedly contracts for the performance of his duties with at least an ordinary degree of skill in such business. If he fails to perform his work reasonably well—*i. e.*, with reasonable skill and diligence—the employer, or master, may lawfully discharge him.

[Troy Fertilizer Co. v. Logan.]

But if the master, after ascertaining the servant's want of proper skill, fails to discharge him for that cause, he will be regarded as having so far waived this implied breach of contract on the servant's part, that he can not set up the fact of his lack of skill, or other defect of service, as a defense to an action brought for the servant's wages, actually earned.

8. One or more single breaches of contract on the servant's part may be waived or condoned, by his being retained in service by the master an unreasonable length of time, after the master's knowledge of the fact of such breaches. Such retention is presumptively a condonation; but the question of waiver is usually one of fact for the jury, dependent on the peculiar circumstances of each case. In a clear case, however, where the evidence is undisputed, it may often become a question of law for the decision of the court.

9. If the servant's want of special skill evinces itself in repeated acts of incompetency, he may be lawfully discharged; and the jury may then look to all previous acts tending to prove a general unfitness for the particular business, whether they were condoned or not.

10. A master, or employer, is not bound, according to the better doctrine, to specify, at the time, his grounds for the dismissal of the servant, or employé; and if he places the dismissal on one ground, he will not be estopped to set up another and different ground, which existed at the time of the discharge, and constituted a legal cause for such dismissal, although this cause was *not then known* to the master. Or, to state the same proposition in the words of Mr. Addison, in his work on Contracts (2 vol. § 890): "If a justifying cause for the dismissal exists, the master may avail himself of it as a defense to an action, although it may not have formed the ground of dismissal, and although the master may not have known of its existence at the time he discharged the servant." Wood on Master & Servant, § 119, and note; §§ 121, 140, 155; *Strauss v. Meertief*, 64 Ala. 299; 38 Amer. Rep. 8; *Bass Furnace Co. v. Glasscock*, 82 Ala. 452; *Jones v. Field*, 83 Ala. 445.

11. If the sub-employés, under the supervising control of a servant, are disrespectful and insolent to him, or are disobedient to his lawful commands, without fault on his part, to an unreasonable degree, the retention of such recusant parties in the master's service, after his knowledge of their behavior, and for an unreasonable time, would justify the servant in quitting the service.

Some of the rulings of the court, as we construe them, are not reconcilable with the tenth proposition above announced; and for this reason, the judgment must be reversed. The

other rulings are reasonably susceptible of a construction which will make them harmonize with the other rules declared.

The several charges requested by the defendant were properly refused, on the ground that they were all either misleading in their tendency, by ignoring important and controlling principles, or else were erroneous, as asserting incorrect propositions.

Reversed and remanded.