# Harden *v.* Darwin & Pulley.

*Bill in Equity for Foreclosure of Mortgages.*

1. *Married woman's capacity to act as trustee.*—At common law, a married woman was not incompetent to act as the trustee of an express trust, and might exercise, in that capacity, all the powers she could exercise if sole and unmarried ; and this principle is strengthened by the policy of modern statutes, known as "Married Women's Laws."

2. *Implied, or resulting trust, as against wife.*—A married woman may, also, in equity be declared a trustee *in invitum*, or by implication of law, even in favor of her husband.

3. *Resulting trust, arising from payment of purchase-money.*—When one person pays the purchase-money of land, while the title is taken in the name of another, a court of equity will, on clear and satisfactory evidence, hold the latter a trustee for the former ; and this principle, which is favored in equity, will be applied, as between husband and wife, on clear proof of intention, where the legal title is taken in the name of the wife, and the purchase-money, or a part thereof, is paid by the husband ; although the presumption arises in such case, in the absence of proof to the contrary, that it was intended as an advancement to the wife, or a provision for her.

4. *Contracts between husband and wife ; voluntary partition, when equity would enforce.*—Notwithstanding the statutory provision that "husband and wife can not contract with each other for the sale of any property" (Code, § 2709), and although a court of equity scans with a watchful and jealous eye all transactions between them ; yet, as between them, the general principle will be applied, that where parties have voluntarily done what the court would compel

[Harden v. Darwin & Pulley.]

them to do, the transaction will be sustained ; as where they make voluntary partition, executing mutual conveyances, of lands partly paid for by each, the legal title being taken in the name of the wife alone.

Appeal from the Chancery Court of Madison.

The record does not show the name of the chancellor.

The bill in this case was filed on the 5th December, 1879, by Darwin & Pulley, merchants and partners in trade, against the personal representative and children of Benjamin L. Harden, deceased, the children being also devisees under the will of his deceased wife, Mrs. Anne E. Harden ; and Mrs. Mary B. Miller was also joined as a defendant. The bill sought, principally, a foreclosure of two mortgages on the same tract of land, executed by the said Benjamin L. Harden, an account of the mortgage debts, and a sale of the lands ; and other relief was also prayed, generally and specially, as applicable to the facts hereinafter stated. The lands conveyed by the mortgages consisted of portions of sections 14, 22, and 23, in township two (2), range two (2), west, containing three quarter-sections ; and were purchased by the said Benjamin L. Harden, on the 23d October, 1867, at a sale made by the administrator of the estate of Giles Nance, deceased, the conveyance being taken in the name of his wife, Mrs. Anne E. Harden. The first mortgage on this tract of land was executed by said Harden and wife, on the 24th September, 1873, to Mrs. Mary B. Miller, to secure a recited indebtedness of $1,704.45, as evidenced by said Harden's promissory note, of even date with the mortgage, and payable on the 1st November, 1874. The mortgage to the complainants was also executed by said Harden and wife ; was dated the 8th March, 1876, and was given to secure the payment of said Harden's promissory note for $1,500, of even date therewith, and payable on the 1st December, 1876. Copies of both of these mortgages were made exhibits to the bill.

In reference to the title to these lands, the bill alleged that, at the time of the sale by Nance's administrator, said Harden had in his hands about $1,600 belonging to the statutory separate estate of his wife, a part of which she agreed might be used by him in the purchase of said lands, " provided the purchase was made in her name, and the conveyance of title executed to her; with the understanding and agreement, that the conveyance should operate only as a security for the payment of the purchase-money paid out of her said separate estate, and not as an absolute conveyance of the land." The price paid for the land was $2,800, " one third cash, and the balance on one and two years ;" and the bill alleged that, of this sum, said Harden paid the entire

OF ALABAMA.

amount with his own funds, except $1,000 which belonged to his wife ; and he took the title in her name, pursuant to the agreement between them. On the 11th January, 1869, as the bill further alleged, said Harden purchased another tract of land from N. P. Wilburn, being a part of one of the same sections, and containing 160 acres. The price paid for this tract was $1,600, of which sum $600 belonged to Mrs. Harden's statutory estate ; and the title to this tract was also taken in her name, the purchase being made, and her funds used, under a similar agreement as before. On the 7th December, 1872, said Harden and wife, desiring to divide these lands between them, as they recited, in proportion to the amount of purchase-money paid by each, jointly executed a deed, which was attested by two witnesses, and a copy of which was made an exhibit to the bill, in the following words :

"*Whereas* Benjamin L. Harden, of said county, at a sale made by Benjamin R. Nance, as administrator with the will annexed of Giles Nance, in the name of his wife, Anne E. Harden, purchased the following described parcels of land," describing the lands, "at and for the sum of $2,820 ; *and whereas* the said Benjamin Harden, having fully paid the purchase-money, on the 29th day of January, 1870, received of said Nance, as such administrator, a deed conveying the said lands to the said Anne E. Harden, which deed is of record," &c. ; "*and whereas*, on the 11th day of January, 1869, the said Benjamin Harden purchased of one N. P. Wilburn the following described land," describing it, "and having fully paid the purchase-money thereof, the sum of $1,600, received from said N. P. Wilburn and wife a deed conveying the said lands [to] the said Anne E. Harden ; *and whereas*, on the purchase of said lands first above described, the said Benjamin L. Harden used $1,000, the separate estate of his wife, paying the remainder of the purchase-money from his own individual moneys ; *and whereas*, on the purchase of said lands above described from said N. P. Wilburn, the said Benjamin L. Harden used the sum of $600, the separate estate of his said wife, paying the remainder of the purchase-money from his own individual moneys ; *and whereas* the two sums so used by Benjamin L. Harden, $1,000 and $600, constitute the entire separate estate of said Anne E. Harden ; *and whereas* the said deeds were made to her solely for the purpose of securing to her the said moneys belonging to her, so used in the purchase of said lands, and not to invest her with an absolute title thereto ; *and whereas* the said Benjamin L. and Anne E. are anxious to avoid the expense and delay of a suit in chancery to divest said Anne E. of any other right, title, claim or interest in said lands, than such as might be neces-

[Harden v. Darwin & Pulley.]

sary to secure her the payment of the said sum of $1,600 ; *and whereas* the said lands conveyed to the said Anne E. by the said N. P. Wilburn are of the value of $1,600, and the said Anne E. is desirous of holding and retaining the said lands so purchased of said N. P. Wilburn, free and exempt from all claim thereon which her husband, the said Benjamin Harden, could or might prefer, by reason of the facts hereinbefore recited, and by reason of any claim he could have thereon as her husband ; *and whereas* the said Benjamin L. is willing to release to the said Anne E. all claim which he could have on said lands, by reason of his payment of part of the purchase-money thereof, and all right or claim he could have thereon or thereto as her husband, on her releasing, surrendering, and conveying to him all the right, title, claim and interest in the lands first above described, conveyed to her by the said Benjamin R. Nance : *Now, this indenture witnesseth;* that the said Anne E. Harden, for and in consideration of the premises, has released, relinquished, surrendered and conveyed, and by these presents doth release," &c., " unto the said Benjamin L. Harden, the said lands above described as conveyed to her by the said Benjamin R. Nance, together with all the right *to have* (?) by reason of the conveyance aforesaid of the said Benjamin R. Nance ; and the said Benjamin L. Harden, for and in consideration of the premises, and the release of the said Anne E., hath released, surrendered and conveyed, and by these presents doth surrender and convey, unto the said Anne E., her heirs and assigns forever, all the right, title, claim and interest, which he could or ought to have, in and to the lands above described as purchased of the said N. P. Wilburn, and conveyed by him to the said Anne E., by reason of the payment by him (said Benjamin L.) of $1,000 of the purchase-money thereof ; and the said Benjamin L. doth here now renounce, surrender, relinquish and release, unto the said Anne E., all right, title and claim to the possession of said lands, and all right, title and claim, which he might or could have in said lands as the husband of the said Anne E., whether as tenant by the curtesy or otherwise ; and the said Benjamin L. doth further covenant and agree, to and with the said Anne E., that she shall have and hold the said lands last above described to her sole and separate use, free and exempt from all claim therein or thereto which he now has, or can have, or might or could hereafter have, as husband of the said Anne E. *In witness whereof,*" &c.

Both of the mortgages were executed subsequent to the execution of this deed. Mrs. Harden made and published her last will and testament on the 22d September, 1876, be-

[Harden v. Darwin & Pulley.]

queathing and devising all her estate to said infant defend-
ants, Lutie W. and Henry T. Harden ; and her will was duly
admitted to probate on the 16th February, 1878 ; but the date
of her death is not stated.   Benjamin L. Harden also died
before the filing of the bill, but the time of his death is not
stated ; and letters of administration on his estate were
granted on the 17th September, 1879.   The bill prayed an
account, foreclosure of the mortgages, and sale of the lands ;
and the prayer then continued thus : " And if your orators
are mistaken as to their right to the relief prayed, then they
pray that said deeds of conveyance to said Anne E. Harden
may be decreed to stand and operate only as security for the
amount of her moneys used in the purchase of the lands con-
veyed by them ; that an account may be taken, to ascertain
what may be due her estate on account of the means thereof
used in paying for said lands ; and that both of said tracts
of land may be sold under the decree of this court, and the
proceeds of sale applied to the payment, first, of what may
be due to the estate of the said Anne E. ; next, to the pay-
ment of what may be due to the said Mary B. Miller, and
then to what may be due to your orators ; and for such other
and further relief as the nature of their case requires."

   The guardian *ad litem* of the infant defendants filed an an-
swer, in which was incorporated a demurrer to the bill,
specifying fifteen causes of demurrer, among which were the
following : 1st, because the bill shows that the lands con-
veyed by the mortgages were the statutory separate estate of
a married woman, who was dead when the bill was filed ; 2d,
that the entire equity of the bill rests on the deed executed
by and between said Harden and wife, and said deed is void ;
3d, because the bill shows that, as against said mortgagees,
Benjamin L. Harden " had a right to give said real estate to
his wife, or to buy the same for her and in her name ;" 4th,
because said Harden and wife had no power, by any contract
or transaction between them, to change the character of her
statutory estate ; 5th, because the wife could not make a valid
voluntary conveyance to her husband ; 6th, because a result-
ing trust cannot be established and enforced against the wife,
as in favor of the husband or his creditors, on the facts stated
in the bill.

   The chancellor overruled the demurrer, and also overruled
a motion to dismiss the bill for want of equity.   An appeal
from this decree is sued out in the name of the infant defend-
ants, and it is here assigned as error.

   WALKER & SHELBY, for appellants.—When the husband is
free from debt, he has an entire and absolute right to purchase

[Harden v. Darwin & Pulley.]

land, and to have the title conveyed to his wife; and when this is done without any fraudulent intent, "it becomes as much her separate property as if it were purchased with her money possessed before marriage."—Wells on Sep. Prop. of Married Women, § 93. When moneys are thus invested by the husband, they are presumed to be intended as a gift or advancement to the wife; and there is no presumption of a resulting trust in favor of the husband.—*Pickett v. Pipkin*, 64 Ala. 520. The title to the lands having vested in Mrs. Harden as a part of her statutory separate estate, it could only be divested out of her in one of the two modes authorized by the statute—that is, by the joint deed of husband and wife, or by a judgment subjecting the lands to a debt for necessaries. The deed executed by and between Harden and wife is invalid, and has no legal operation or effect. *Hammond v. Thompson*,56 Ala. 589. It is void as a contract between husband and wife, by express statutory provision (Code, § 2709), and because it is an attempt to change the wife's statutory estate into an equitable estate, which is against the policy of the law.—*Coleman v. Smith*, 55 Ala. 369. A deed from the wife to the husband is absolutely void. *White v. Wager*, 25 N. Y. 328; *Kennamore v. Pyle*, 44 Indiana, 275; *Preston v. Frye*, 38 Md. 221; *Concord Bank v. Bellis*, 10 Cush. 276; *Pierce v. Pierce*, 25 Vermont, 511. It creates no estoppel against either the wife or her devisees.—*Gleddin v. Stripler*, 52 Penn. 400; 10 Cush. 276; Herman on Estoppel, 215. The title and property remaining in the wife, the mortgages sought to be enforced were void.—*Wilkinson v. Cheatham*, 45 Ala. 337; *Davidson v. Lanier*, 51 Ala. 318; *Bibb v. Pope*, 43 Ala. 190; *Coleman v. Smith*, 55 Ala. 369; *Williams v. Bass*, 57 Ala. 486; *Chapman v. Abrahams*, 61 Ala. 108. The absolute deeds to Mrs. Harden can not, under the facts alleged, be declared to operate as mortgages. This would be, in effect, to create and enforce an express trust against the wife, or to raise a resulting trust against her, by implication of law, in favor of her husband or his subsequent creditors. Her coverture disabled her from creating an express trust, and the statute requires such a trust to be in writing.—Code, § 2199. That a resulting trust will not be implied against the wife, in favor of the husband, is settled by the authorities.—Wells on Sep. Prop. Mar. Women, 225; *Cairns v. Colburn*, 104 Mass. 274; *Whitten v. Whitten*, 3 Cush. 192; *Lochenour v. Lochenour*, 61 Indiana, 595; *Pickett v. Pipkin*, 64 Ala. 520.

D. P. LEWIS, and CABANISS & WARD, *contra*.—A married woman has legal capacity to become a trustee; and, *a forti-*

*ori*, she may be declared ' a trustee *in invitum*.—1 Bishop on
Mar. Women, §§ 700–01 ; 2 *Ib.* §§ 115–20 ; *Gridley v. Wynant,*
23 Howard, U. S. 502 ; *Holman v. De Nyse,* 51 Ala. 95–9. A
court of equity will declare an absolute deed to be a mort-
gage, or security for a debt only, on clear and satisfactory
proof.—*Parish v. Gates,* 29 Ala. 254 ; Browne on Stat. Frauds,
§§ 438, 441, 445 ; 2 Bish. M. W. §§ 119, 125, 490. Contracts
between husband and wife will be enforced in equity, when
they are not forbidden by statute, nor contrary to public
policy.—2 Story's Equity, § 1372 ; 3 Atk. 72 ; *Williams v.
Maull,* 20 Ala. 729 ; *Andrews v. Andrews,* 28 Ala. 432. The
general principle applies in this case, that a court of equity
will always sanction and uphold an act voluntarily done by
the parties, which it would have compelled them to do on a
proper application.

SOMERVILLE, J.—The principle is well settled, without
conflict among the authorities, that a married woman could,
at common law, act as *trustee,* not being incapacited to do so
by the fact of coverture.—1 Bish. Marr. Women, § 700 ; 2 *Ib.*
§ 115 ; 1 Perry on Trusts, §§ 48–9 ; Hill on Trustees, 48 ;
Lewin on Trusts and Trustees, 34–35. And the principle is,
in a measure, strengthened by the policy of modern legisla-
tion, which has established a system of "married women's
laws," encouraging the tenure by *femmes covert* of separate
estates in their own name, and for their own benefit, and
conferring on them the right to sue and be sued alone in
certain cases, and authorizing them to devise or bequeath
such property as if they were *femmes sole*.—Const. 1875, Art. X,
§§ 6–7 ; Code, 1876, §§ 2704–2713, 2892.

The wife's power as trustee, over such property as she
may hold in trust, seems also to be well settled. Chancellor
KENT says, " she may transfer a trust estate, by lease and
release, as a *femme sole*."—2 Kent's Com. 151. It is added
in Bishop on Married Women, § 700, that " she may execute
a power of attorney to convey such an estate, and a convey-
ance under it will be good. She may, likewise, bring suits
as trustee, which has been allowed where her husband joined
as plaintiff with her."

In *Gridley v. Wynant,* 23 How. (U. S.) 500, it was said by
CAMPBELL, J. : " There is no incapacity in a married woman
to become a trustee, and to exercise the legal judgment and
discretion belonging to that character. A trustee, in equity,
is regarded in the light of an instrument, or *agent* for the
*cestui que trust,* and the authority confided to him is in the
nature of a power. It has long been settled, that a married
woman may execute a power, without the co-operation of

her husband." And it has never been doubted, we may add, that she may act as agent, either for her husband or a stranger, and that coverture takes from her no capacity in this respect.—1 Bish. on Mar. Women, § 701; *Lang v. Waters*, 47 Ala. 624.

The doctrine being clear, then, that the wife may act as a trustee of an express trust, the reasons are more forcible why she may in equity be declared a trustee *in invitum*, or by implication; trusts of this nature being implied as intended by the parties, or forced on their consciences by operation of law.—2 Story's Eq. Jur. § 1195. The principle is favored in equity, that where one person pays the purchase-money, and another takes the title, the latter will be treated as a trustee of the former; but the facts are required to be shown by clear and satisfactory evidence.—2 Whart. Ev. § 266; 2 Story's Eq. Jur. §§ 1195–6. To such an extent have *resulting trusts* been favored by the law, that they have always been excepted from the operation of the statute of frauds, and parol evidence, though received with great caution, has been uniformly held admissible to establish the collateral facts from which they may be implied.—1 Greenl. Ev. § 266; 2 Whart. Ev. § 1035. And section 2199 of our present Code, which prohibits the creation of any trusts in lands, unless by instrument in writing, makes special exception of " such as result by implication or construction of law,"—a phrase which has been properly construed to leave the above salutary principle, as to their establishment by parol proof, unaltered, and remaining as it was at common law.—*Robison v. Robison*, 44 Ala. 227.

And although the principle has been questioned, we are clear in the view of its soundness and policy, as applied in favor of the husband as against the wife. It is true that, where the husband pays the purchase-money of land, and the title is taken in the name of the wife, the presumption would be, *prima facie*, that he intended to make an advancement to, or provision for her; just as in the case of parent and child, and for the similar reason, that he is deemed to have acted from motives of natural love and affection.—*Welton v. Divine*, 20 Barb. (N. Y.) 9. But it is equally plain, that the question is one of intention purely, and this presumption is liable to rebuttal.—2 Bish. Mar. Women, §§ 113–121. It was said by NELSON, C. J., in *Guthrie v. Gardner and Wife* (19 Wend. 414, 416), that " all the cases concur, that the presumption in favor of a provision for the wife, where the deed is taken in her name, may be rebutted by the cotemporaneous circumstances." And where there is an agreement, express or implied, on the wife's part, to convey

to the husband on request by him, there is a clear resulting trust.—2 Story's Eq. Jur. (12th ed.) § 1201c, *note* 1; 2 Bish. Mar. Women, § 124; *Cotton v. Wood*, 25 Ia. 43; also, *Cairns v. Colburn*, 104 Mass. 274; *Whitten v. Whitten*, 3 Cush. 191, 197; *Fox v. Doherty*, 30 Ia. 334.

The rule is not different, where there is an investment of a mixed fund, and where a part of it is the property of the husband, and a part that of the wife. The resulting trust may be established, in such case, for the husband's part.—2 Bish. Mar. Women, § 125; *Tharp v. Tharp*, 3 Met. (Ky.) 372.

Under the allegations of the bill in the case at bar, which were admitted to be true by the demurrer, as far as well-pleaded, there clearly appears to be a resulting trust in favor of Benjamin Harden, so far as concerns the money belonging to him which was invested in the lands, the title of which was taken in the name of Mrs. Ann Harden, his wife. The mutual deeds, executed between the wife and the husband, were designed merely to separate the relative interests of the parties, and should be sustained, so far as the partition clearly appears to be fair and just. She must be regarded as conveying in her capacity as trustee, under the recitals of the deed and the admitted facts. Where the parties have voluntarily done what they can be compelled by law involuntarily to do, the transaction will in equity be sustained.

But it is urged that, under the statute, " husband and wife can not *contract with each other for the sale of any property* " (Code, 1876, § 2709); and that this provision is violated by the partition and mutual conveyances between Harden and wife in this case. We do not consider this transaction as a contract of sale, within the prohibition of the statute. It has been held, that it does not inhibit the husband from making a deed to the wife, in payment of a debt due her by him.—*McMillan v. Peacock*, 56 Ala. 127; *Helmetag v. Frank*, 61 Ala. 67; *Barclay v. Plant*, 50 Ala. 509. No more would it prevent a wife, who holds the title of lands in trust for the husband, from executing it in such manner as she could be compelled to do by law. But, in view of the relation of the parties, and the influence which the husband exerts thereby over the conduct of the wife, all transactions of this, and in fact of every character between them, will be scanned with a watchful and jealous eye by courts of equity.

These views settle the equity of the bill, and make it unnecessary to consider the other questions raised. The " Nance tract " of land was not, under the principles above enunciated, the property of the wife, but of the husband; and the mortgages executed by him to Mary B. Miller and Darwin &

[Smith's Executor v. Cockrell.]

Pulley, were valid and binding, if the averments of the bill be taken as true.

The demurrer was properly overruled, and the decree of the chancellor making such ruling, and refusing to dismiss the bill for want of equity, is affirmed.