## Lee *v.* Lee.

*Bill in Equity for Allotment of Dower, and Account of Rents and Profits.*

1. *Widow's right of dower, as affected by separate estate.*—To bar or reduce the widow's right of dower in her husband's lands, on account of other lands belonging to her in her own right (Code, §§ 2715–16), they must be held by her as a statutory estate, as distinguished from one that is equitable.

2. *Decree declaring lands to belong to married woman, " as her separate estate under the laws of this State ;" whether estate is statutory or equitable.* Under a decree in a chancery cause, rendered in 1875 (before the decision in *Short v. Battle,* 52 Ala. 456, re-established the distinction between the statutory and equitable estates of married women), enjoining actions at law by purchasers at execution sale against the husband, and vesting the title to the lands in controversy in the wife, who was the complainant, " as her separate estate under the laws of this State ;" these words " are of doubtful import on their face," and the court does not decide whether they create a statutory or an equitable estate; but they do not establish an intended change in the character of the complainant's estate, as shown by the pleadings and proof.

3. *Decree construed, as affected by consent and agreement of record.* A decree in a chancery cause, rendered under a submission on pleadings and proof, held the complainant, a married woman, entitled to relief; vested the lands in controversy in her, "as her separate estate under the laws of this State ;" perpetually enjoined the defendants, purchasers at execution sale against her husband, from the further prosecution of their action at law, and then added : "And the defendants having agreed to assent to this decree, and to release all errors, as shown by their agreement hereunder written, it is by consent further ordered and decreed, that the complainant's next friend pay the costs of this suit," &c. The agreement was signed by the solicitors of both parties, and was in these words : " We hereby assent to the foregoing decree, and hereby release all errors." *Held,* that the agreement only extended to a release of errors on one side and the assumption of costs on the other, and did not show that the decree was rendered by consent, so far as it affected the character of the complainant's estate in the lands.

4. *Conveyance of lands to married woman ; character of estate.*—A conveyance of lands to a married woman, without any words showing an intention to exclude her husband's marital rights, vests in her a statutory estate.

5. *Purchase of lands by husband, with wife's money ; approval by court of voluntary act which it would have compelled.*—When lands are bought by the husband with moneys belonging to the separate estate of his wife, whether statutory or equitable, and the title taken in his own name, a court of equity will, at the instance of the wife, compel him to convey the property to her, by words creating the same estate as that by which she held the money, unless creditors or purchasers have acquired intervening rights ; and if the husband does this voluntarily, the court will sanction and approve the act.

6. *Conversion of wife's equitable estate into statutory estate.*—Conceding that a married woman, owning an equitable estate, may intentionally

[Lee v. Lee.]

convert it into a statutory estate; yet such conversion, intentionally made, is not shown by proof of the facts, that lands bought by the husband with moneys belonging to her equitable estate, title being taken in his own name, and afterwards sold under execution against him, were bought in her name, with other moneys belonging to her equitable estate, and conveyed to her by words not excluding his marital rights; nor by a decree in chancery, under a bill filed by her against subsequent purchasers at execution sale against her husband, by which the title is vested in her "as her separate estate under the laws of this State."

APPEAL from the Chancery Court of Perry.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 15th September, 1879, by Mrs. Tabitha J. Lee, the widow of R. H. Lee, deceased; and sought an allotment of dower in certain lands, of which her said husband was seized and possessed during coverture, and which the several defendants claimed as purchasers and sub-purchasers under judicial sales against him, and an account of the rents and profits received or accruing after his death. Said Richard H. Lee and the complainant were married in July, 1855, and he died in November, 1878. The main defense against the asserted right of dower was, that the complainant owned other lands, of equal or greater value than her dower interest in her husband's lands; and this depended on the character of the estate held by her in those lands, of which she was in possession at the death of her husband, and at the time her bill was filed. The different conveyances constituting her chain of title, and the consideration of each as recited or shown, are described in the opinion of the court; and it is only necessary to state the following facts, in addition to the facts therein stated: The deed of the United States marshal to the complainant, as the purchaser at the sale under execution against her husband and others, was dated November 12th, 1868, and conveyed to Mrs. Lee, without the addition of any other words, "all the legal right, title, interest and claim, in and to said property," of the defendants in execution. The bill in chancery afterwards filed by the complainant against R. Foster and P. Lockett, subsequent purchasers at execution sale against her husband, the other pleadings in the cause, and the decree rendered, were offered in evidence by the defendants, for the purpose of showing that the complainant's estate in the lands was statutory. By her bill in that case, the complainant claimed a "separate estate" in the lands, not stating whether it was statutory or equitable, and stated the facts and conveyances under which her title accrued, substantially as they are stated in the opinion of the court in this case; and alleged that the sheriff's deeds to Foster and Lockett were clouds on her title. The prayer of the bill was, "that complainant's right, title and claim to said lot and said parcel of land, as her separate estate,

[Lee v. Lee.]

may be recognized and protected by this honorable court, and, if her legal title to said property, as her separate estate, shall appear to be in any respect defective, that the same may, under the order and decree of this court, be perfected and secured to her;" that the sheriff's deeds to Foster and Lockett be cancelled, and they enjoined from the further prosecution of their actions at law; and for other and further relief under the general prayer. The chancellor's decree was rendered on the 30th April, 1875, and, after reciting that the cause was submitted on pleadings and proof, proceeded thus: "Upon consideration thereof, the court is of the opinion that the complainant is entitled to the relief prayed in her bill; and therefore, upon consideration thereof, it is ordered, adjudged, and decreed by the court, that the sale to said P. Lockett, made by the sheriff of Perry county on the 6th November, 1871, be, and the same is hereby, vacated, annulled, and set aside, and the sheriff's deed to said Lockett for the house and lot therein described be, and the same is hereby, set aside and annulled;" that the sale to said Foster be also set aside, and his deed be annulled and cancelled; that the action at law be perpetually enjoined; "that all right, title and claim, in and to the said house and lot and land above described, which may be in the said defendants, or any or either of them, be, and the same is hereby, devested out of them, and vested in the said Tabitha Lee, as her separate estate under the laws of this State. And the defendants having agreed to assent to this decree, and to release all errors, as shown by their agreement hereunder written : it is by consent further ordered and decreed, that the complainant's next friend, Thomas Curry, pay the costs of this suit, including the tax-fee for complainant's solicitors; and that, if the same be not paid within thirty days after the taxation of the costs by the register, execution may issue therefor." The agreement referred to, written beneath the chancellor's name, and signed by the solicitors of both parties to the cause, is in these words: "We hereby assent to the foregoing decree, and hereby release all errors."

On final hearing, on pleadings and proof, the chancellor held that the complainant was not entitled to any relief under her bill, because her estate in the lands held by her was statutory, and the lands were of greater value than her dower interest in her husband's lands; and he therefore dismissed her bill. The chancellor's decree is now assigned as error, together with his rulings on objections to evidence which require no notice.

JNO. F. VARY, for appellant.—The deed of gift for the slaves, executed to Mrs. Lee by her father, created in her an equitable separate estate, by the uniform decisions of this court,

[Lee v. Lee.]

which were overruled by *Molton v. Martin*, 43 Ala. 651, and *Denechaud v. Berry*, 48 Ala. 591; and these decisions, which were themselves overruled by *Short v. Battle*, 52 Ala. 456, did not change or affect the character of her estate. No trustee being named in the deed, Mrs. Lee's husband became her trustee by operation of law; but he had no power or authority to change the character of her estate, his duty being to preserve and protect it.—1 Bishop on Married Women, §§ 800-02; *Short v. Battle*, 52 Ala. 456. When the husband purchases property with money in his hands belonging to his wife, taking the title in his own name, a trust results to the wife, which a court of equity will recognize and enforce, and which may be established by parol.—1 Perry on Trusts, 3d ed. §§ 85, 87, 127, 138, and authorities cited in note 5, on page 142; 1 Greenl. Ev. § 266, note 3. There can be no doubt that the money paid for the property at the marshal's sale, being part of the debt due to Mrs. Lee on account of the hires of her slaves, belonged to her equitable estate; and if the marshal's deed uses words which would create in her a statutory estate, they can not be allowed to have that effect, since the facts show that she never intended to change the character of her estate; and the subsequent conveyance by her husband, executed in voluntary recognition of a duty and a trust which the court would have enforced against him, vests in her an equitable estate.— *Warren & Burch v. Jones*, 68 Ala. 449; *Cahalan v. Monroe*, 70 Ala. 271; *Goodlett v. Hansell*, 66 Ala. 151; *Helmetag v. Frank*, 61 Ala. 67; *McMillan v. Peacock*, 57 Ala. 127.

The character of this estate is not changed, as the chancellor held, by the decree in chancery rendered in the suit against Lockett and Foster. A judgment or decree is conclusive only on the question put in issue and decided.—*Ford v. Ford*, 68 Ala. 144; *Davidson v. Shipman*, 6 Ala. 27; *Boswell v. Carlisle*, 70 Ala. 249; *Johnston & Stewart v. Riddle*, 70 Ala. 226. At the time when Mrs. Lee's bill in that case was filed, and when the decree was rendered, the decisions of this court, above cited, recognized no distinction between equitable and statutory estates, but held both governed by statutory provisions; and whether the complainant's estate was equitable or statutory, was immaterial to the relief prayed and granted. Nor can any weight be attached to the agreement of counsel attached to the decree, as showing that the decree was rendered by consent, and therefore as evidencing an intentional and voluntary change in the character of the complainant's estate. The decree was rendered on pleadings and proof, and disposed of the case on its merits; and the agreement was evidently added afterwards, to stop the litigation, one party assuming the costs, and the other releasing errors.

Jno. P. Tillman, and with him Pettus & Dawson, *contra.* (1.) The bill is for dower merely, and no fact is averred, or relief prayed, looking to a reformation of any of the conveyances through and on which the complainant bases her claim. Her right to relief, then, does not depend upon any equitable trusts or interests which she might, in another proceeding, assert against the lands, but upon the nature and character of the estate vested in her by the several muniments of title. (2.) Prior to the purchase at the marshal's sale, Mrs. Lee had no estate whatever in the lands, though she may have had an equity on account of the use of her funds in the payment of the purchase-money, while the legal title was taken in the name of her husband.—*Bolling v. Mack,* 35 Ala. 727; *Evans v. English,* 61 Ala. 416; *Holley v. Flournoy,* 54 Ala. 99; *Prince v. Prince,* 67 Ala. 569. This equity could not prevail against a *bona fide* purchaser from the husband, nor against an execution lien acquired without notice.—67 Ala. 569; *Preston v. McMillan,* 58 Ala. 84. The marshal's deed vests in her, as the purchaser at the execution sale, a statutory estate, the nature of which can not be affected, in this proceeding, by the character of the funds used in paying for it, or her intention in making the purchase. The deed creates and determines her estate, and without it she would have none.— *Wheeler v. Walker,* 64 Ala. 560. (3.) The character of this estate is not changed by the conveyance executed to the complainant by her husband, nearly two years after the sale under execution. Whatever interest he had in the lands, except the statutory right of redemption (which is a mere personal privilege, and can not be assigned), passed to her under the marshal's deed; and according to her theory, he never had any beneficial interest whatever. (4.) Whatever doubt existed, if any, as to the nature and character of the complainant's estate in the lands, is removed by the terms of the chancery decree vesting the title in her " as her separate estate under the laws of this State." One of the purposes of the bill in that case was to ascertain and determine the character of her estate. All the facts pertaining to her title were before the court: she set up the several deeds, creating estates apparently of different characters, and prayed that her estate might " be perfected and secured to her; " and a consent decree was entered, by which she is concluded.

STONE, C. J.—The bill in this case was filed by Mrs. Lee, and its purpose is to have dower allotted to her in two tracts of land, described in the pleadings. The bill avers that, during the coverture, her husband, Richard H. Lee, was seized in fee of the entire interest in six hundred and forty acres of land, known as the "Prairie place," and of an undivided half in-

[Lee v. Lee.]

terest in another tract, containing about eighteen hundred acres, known as the "Muckle place." Each of the tracts of land is described by Government-survey numbers. It is not controverted that complainant has fully established her claim to dower in each of the tracts, looking alone to her side of the case. All the affirmative conditions—marriage, seizin of the husband during the coverture, and his death—are fully proved. The lands were aliened during the life of the husband, and the wife did not join therein.

Much parol testimony was taken in the court below, and many exceptions were filed to parts of it. Large part of the testimony of complainant herself was objected to, and to some extent these objections are well founded.—*Gordon v. Tweedy*, 71 Ala. 202. There is other testimony to which exceptions were well taken, but it is not our intention to pass on the many exceptions. Enough legal testimony remains to establish the facts hereinafter stated.

The defense relied on in bar of complainant's right of dower is two-fold: First, that the lands were partnership property, owned by Richard H. Lee and James Lee as partners, and that they were sold in payment of partnership liabilities. This defense is properly abandoned by defendants, for the proof is insufficient to make it good.

The second defense pleaded and relied on in bar of complainant's claim of dower is, that at the time of the husband's death, and at the time complainant filed her bill in this cause, she had and owned a separate estate of equal or greater value than her dower interest in her husband's estate. There was no personal estate, of which the record gives any notice.—Code of 1876, § 2715. To bar dower, the separate estate owned by the widow must be statutory.— *Williams v. Williams*, 68 Ala. 405; *Harris v. Harris*, 71 Ala. 536. There is no question in this case that Mrs. Lee owned, and still owns, a separate estate equal in value to the dower interest she claims in lands which had been her husband's. The disputed question is, whether that estate is equitable or statutory.

In 1856, Curry, father of Mrs. Lee, gave to her a lot of slaves—the gift evidenced by deed executed and delivered—"to have and to hold in her own right and title, and for her own sole use and benefit, and the proceeds arising from their labor for her own sole use and benefit, free from the liabilities and debts of her husband, Richard H. Lee, or any future husband she may have; . . as a separate and independent estate, from any estate of her present husband, Richard H. Lee, or any future husband she may have." Richard H. Lee and James Lee, his brother, were farming together in partnership; and the proof shows that Mrs. Lee's slaves, with the assent and

27

approbation of Mr. Curry, her father, were hired to said Richard H. and James Lee, and were worked by them in their joint planting operations, until they were emancipated,—about nine years.   The only proof offered on the subject shows that the hire of the slaves was worth annually eight hundred and fifty dollars.   No price for the hires had been agreed upon, but it was to be a reasonable hire.   The hires were not paid, but were allowed to accumulate, as a debt due from the two brothers.   In 1865, there was paid to the complainant, on account of said hires, thirty-two bales of cotton, the property of the two brothers, which, being sold, yielded fifty-eight hundred dollars; which sum. by agreement, she was to, and did allow, as a credit on her said claim for negro hire.   Before that payment, there was due to her, if interest be computed, over ten thousand dollars, according to the valuations fixed by the testimony.

In November, 1865, Mrs. Lee, complainant, negotiated for the purchase of a residence, with about twenty-four acres of ground attached, lying contiguous to the town of Marion, and known as the "Talbird place," at the purchase price of sixty-five hundred dollars.   Boone was the owner at that time, and R. H. Lee, husband of complainant, attended to paying the money, and receiving the title.   He paid for the property with the proceeds of the cotton, and furnished the residue of the purchase-money, something over six hundred dollars.   He took the title from Boone and wife to himself.   Lee and wife immediately took possession, and she is still in possession, claiming in her own right.

In July, 1868, one Tutt, in consideration of eighteen hundred dollars, sold and conveyed to Richard H. Lee a tract of land of about seventy acres, adjoining the said "Talbird place;" and since then the two places have been occupied and possessed as one.   In November, 1868, both places—the "Talbird place" and the "Tutt place"—were sold by the United States marshal, and were purchased by complainant, and title made to her, without any words excluding the marital rights of her husband.   The money, something over twelve hundred dollars, used in this purchase, was furnished by James Lee, also in part payment of the liability for the hire of complainant's slaves, as above set forth.   In 1870, Richard H. Lee made a direct conveyance to his wife, the complainant, of the Talbird and Tutt tracts of land, conveying to her, without words of exclusion, said two tracts of land, and his statutory right to redeem the same.   This deed is upon the recited consideration of forty-five hundred dollars, part of the liability for the hire of complainant's slaves, described above.   We have made a rough calculation of the sum due for negro hire, according to

the testimony; and adding interest computed by statutory rule, there was due to her, at the time this deed from her husband was made, between four and five thousand dollars. The highest valuation placed on the entire property, at the time the testimony was taken in this cause, fixes it at less than the first purchase price of the Talbird property. It was probably worth, at the commencement of this suit, between three and four thousand dollars.

Subsequent to the deed by R. H. Lee to his wife, the property was again levied on and sold under executions against Richard H. Lee; and Lockett and Foster became the purchasers. They instituted an action of ejectment to recover the property, and thereupon Mrs. Lee, by bill for the purpose, enjoined the prosecution of that suit, claiming that the property was hers. The bill, answer, and decree of the chancellor in that cause, were put in evidence by the defendants in this cause. The chancellor decreed in favor of Mrs. Lee, holding that the property was her separate estate, but without employing any words of exclusion, as to the marital rights of the husband. This, so far as that nuniment of title is concerned, tends to show, as the deed of the marshal did, that her title was statutory. That decree was rendered in 1875, and, after perpetually enjoining the ejectment suit, devesting all title out of the plaintiffs therein, decreed the property to "the said Tabitha Lee, as her separate estate under the laws of this State."

For reasons hereafter stated, we consider it unnecessary to decide whether the language of this decree, unexplained, vested in Mrs. Lee a statutory or equitable estate. The decision of that question, in that suit, was not rendered necessary, either by the averments in the pleadings, or by the wants of the litigation. The words are of doubtful import, and need not be interpreted.

Nor do we think there is any thing in the recited agreement in the last paragraph of the decree, which affects the question we are considering. The whole decree, except the last paragraph, demonstrates that it was not a consent decree on the merits. The last paragraph, and the consent, show their extent and purpose. They must have been added after the decree had been rendered and was known. It evidences an agreement to waive errors on one side, and to assume costs on the other. Why waive errors, if the whole decree was by consent? *Consensus tollit errorem.*—*Moon v. Crowder,* 72 Ala. 79.

In the summary of facts given above, we have the case of property—real estate—purchased and paid for with moneys which were Mrs. Lee's equitable separate estate, and the title taken in such form as to evidence a statutory separate estate. And the question arises, can this be set up in this chancery

suit, in avoidance of the bar relied on by defendants to com-
plainant's claim of dower? If this were a suit in a law court,
which can only look at the legal titles, there is no question that
the marshal's deed invested Mrs. Lee with a statutory estate in
the Talbird and Tutt lands.—*Short v. Battle*, 52 Ala. 456;
*Lee v. Tannenbaum*, 62 Ala. 501; *Evans v. English*, 61 Ala.
416; *Parsons v. Woodward*, 73 Ala. 348.

We have many rulings which, it is contended, bear on this
question. It is settled, that if the moneys of the wife, her stat-
utory separate estate, be invested for her, and the title taken in
her name; or, if the purchase be of personal property, and no
paper title taken, such property becomes the statutory separate
estate of the wife.—Code of 1876, § 2709; *Coleman v. Smith*,
55 Ala. 369; *Harden v. Darwin*, 66 Ala. 55; *Smith v. Whit-
field*, 71 Ala. 106; *Harris v. Harris, Ib.* 536; *Daffron v.
Crump*, 69 Ala. 77. We have held, however, that if the *cor-
pus*, other than money, of the wife's statutory estate, be
exchanged for other property, without instrument in writing
signed by husband and wife, and witnessed and acknowledged
as the statute prescribes, the wife does not acquire a title to
the property obtained in the exchange.—Code, §§ 2707–8;
*Evans v. English*, 61 Ala. 416; *Pollak v. Graves*, 72 Ala. 347.
So, we have held, that the natural increase of domestic animals,
property of the wife's statutory estate, is itself her statutory
separate estate—applying the maxim, *partus sequitur ventrem*.
*Gans v. Williams*, 62 Ala. 41; *Walker v. Ivey*, 74 Ala. 475.
And the rents and profits of the wife's equitable separate estate
belong to her, unless she act in such way as to raise the pre-
sumption of a gift to her husband.—*Roper v. Roper*, 29 Ala.
247; *Gordon v. Tweedy*, 71 Ala. 202; *Allen v. Terry*, 73 Ala.
123; *Crockett v. Lide*, 74 Ala. 301.

There is a remaining question: If the moneys of the wife
be invested in property, and title taken in the husband, chan-
cery will compel him to convey the property to her, unless the
rights of purchasers or creditors have accrued, without notice
of the wife's equity.—*Preston v. McMillan*, 58 Ala. 84. And
the title by which she held the money or means thus invested,
will determine the nature of the title chancery will clothe her
with.—*Coleman v. Smith*, 55 Ala. 367. And the husband,
being compellable thus to convey to her, may voluntarily do
what he could be thus compelled to perform. Chancery sanc-
tions and approves as well done any voluntary act of which it
would compel the performance.— *Wilson v. Sheppard*, 28 Ala.
623; *Harden v. Darwin*, 66 Ala. 55; *Goodlett v. Hansell,
Ib.* 151.

It may be contended, that this is not the case of a transmuta-
tion of a statutory into an equitable separate estate, which was

[Lee v. Lee.]

the case in *Coleman v. Smith*, 55 Ala. 367. Mrs. Lee's estate was equitable, and the contention is, that it has been changed into a statutory estate, by her own conduct; that, as to such equitable estate, she has the powers of a *femme sole*, and may charge, or change it at pleasure, and may, with the concurrence of her husband, dispose of it as she chooses, even to the extent of giving it to her husband. Without intending to decide this question, we may concede, for the purposes of this opinion, that she had such power. Is there enough in this record to show us she intended to make such change in the *status* of her estate? Do not the circumstances strongly tend to repel such conclusion?

The change contended for is certainly a radical one. An equitable separate estate is much the more valuable of the two, for over it the wife's power is much greater, and the husband's much less, than over a statutory estate. In the former, the husband has no interest, save as the wife may give it to him. It can not be charged, unless the wife by her own contract charge it. Of the latter, the husband is trustee, and receives and administers the incomes and profits, without liability to account; and the *corpus* may be charged with debts, even of the husband's contracting, for the "comfort and support of the household," &c. Other differences might be pointed out. The purchase at marshal's sale was made, and the conveyance taken, when Mrs. Lee was not present; and there is neither averment nor proof that either her attention, or that of her husband, was called to the fact, that the deed wrought a radical change, *prima facie*, in the *status* of her estate.

The chancellor's decree, referred to above as vesting in Mrs. Lee a title to the property, "as her separate estate under the laws of this State," was rendered April 30, 1875. At that time, and for years before, according to the rulings of this court as theretofore constituted, the deed from her father under which she claimed, although containing strong words of exclusion, nevertheless clothed her with a statutory separate estate.—*Molton v. Martin*, 43 Ala. 651; *Glenn v. Glenn*, 47 Ala. 204; *Denechaud v. Berry*, 48 Ala. 591. These rulings stood as the law of the land when the chancellor rendered said decree, April 30, 1875. Well might the chancellor pretermit all expression of the character of Mrs. Lee's estate, when, by the accepted utterances of this court, the separating line between the two classes of separate estates had been obliterated. The decisions referred to were overruled in *Short v. Battle*, 52 Ala. 456, decided at the June term, 1875. The effect of that ruling was the re-establishment of the two classes of separate estates, which had been recognized since the adoption of the Code of

[Grider v. Tally.]

1852. We can not think this record shows an intention to change Mrs. Lee's estate from equitable to statutory.

Another phase of this question. Conceding that, after Mrs. Lee's purchase at the marshal's sale, her title, until reformed, was statutory, this clothed her husband with only the naked legal trust, with the right to administer the trust fund without liability to account for the rents, incomes and profits; and when her husband subsequently conveyed to her, did he not thereby renounce, in her favor, any and all right he may have had as her statutory trustee, and thus did only what chancery, on the facts of this case, would have compelled him to do? Did she not thereby become clothed with the title to the property, in the same right as that by which she held the money with which it was purchased?—*Goodlett v. Hansell,* 66 Ala. 151; *Harris v. Harris,* 71 Ala. 536. These lands oppose no bar to Mrs. Lee's right of dower.

Reversed and remanded.