# Hawkins *v.* Pearson.

*Bill in Equity for Reformation of Mortgage, and for Removal of Cloud on Title.*

|96|369|
|127|373|

1. *Relief in equity or usurious contract; offer to abate interest.*—Where a bill in equity by the mortgagee for the reformation of a mortgage shows that the mortgage is tainted with usury, the complainant is not entitled to relief unless he offers to abate the whole interest.

2. *Amendment of bill in equity; when allowable.*—A bill in equity which as originally filed prayed for the reformation of a mortgage, and the foreclosure thereof, may be amended by striking out the prayer for a foreclosure, and making the bill one for the reformation of the mortgage, and for the removal of a cloud on the title of the mortgagee.

3. *Cancellation of deed.*—Land was conveyed to a husband and wife jointly as tenants in common. A mortgagee of the husband alone,

24–96.

[Hawkins v. Pearson.]

after the death of the wife, filed a bill seeking a cancellation of the legal title of the heirs of the wife to a one-half undivided interest in the land, the bill alleging that the husband alone purchased the land, that he paid part of the purchase money out of his own funds and the balance thereof out of the loan which the complainant's mortgage was made to secure, that, without any directions to that effect, the vendors conveyed the land to the husband and wife jointly, that at the time the deed was signed neither of them knew that it was made to them jointly, and that the wife never claimed any interest in the land; but the bill did not show that the husband did not accept the deed with knowledge of its contents, and intending that it should operate to invest his wife with the title of a tenant in common with himself in the premises. *Held*, that, on the averments of the bill, the complainant was not entitled to have the legal title to a one-half undivided interest in the land divested out of the heirs of the wife.

    4.   *When reformation of mortgage relates back, as against wife of mortgagor.*—The reformation of a mortgage relates back to the date of its execution, as against the mortgagor's wife, who became such after the making of the mortgage. •

APPEAL from the Chancery Court of St. Clair.

Heard before the Hon. S. K. McSPADDEN.

The original bill in this case was filed on the 24th day of March, 1891, by Benjamin F. Hawkins, against Margaret E. Pearson, the widow of John T. Pearson, deceased, and against Jesse R. Pearson and others, children and heirs at law of said John T. Pearson, deceased, all said heirs at law except one, John H. Pearson, being children of Medora I. Pearson, a former wife of John T. Pearson, deceased; and sought the reformation of a mortgage executed by said John T. Pearson to the complainant, by the correction of the description of the land intended to be conveyed thereby, to have the legal title to an undivided one-half interest in a portion of the land divested out of the heirs of said Medora I. Pearson, and a foreclosure of the mortgage when reformed as prayed for.

The mortgage executed by said John T. Pearson to the complainant was made an exhibit to the bill, and showed upon its face that it was given to secure the payment of a debt for seven hundred dollars, with interest thereon at the rate of ten *per cent. per annum* from the date of the mortgage. The defendants having demurred to the bill upon the ground, among others, that the bill showed that there was usury in the contract sued on, and that the complainant did not offer to do equity by offering to surrender the usurious interest or in any way to release his claim thereto, the complainant amended his bill. The change made by the amendment in the matter of the relief sought, and the ruling of the court upon the demurrer based upon the change, are sufficiently shown in the opinion. The opinion

[Hawkins v. Pearson.]

also sufficiently states the case made by the bill as amended, for a cancellation of the legal title of the heirs of Medora I. Pearson to an undivided interest in a portion of the lands in dispute, and the ruling of the court upon this point. The eleventh assignment of demurrer was as follows : "The complainant fails to show in and by his bill any legal or equitable right on his part to have his mortgage revised so as to divest out of respondent, Margaret E. Pearson, her homestead rights acquired in and to said lands."

This is an appeal by the complainant from the decree rendered on the demurrers of the defendants to the original bill, and to the bill as amended.

M. M. SMITH, for appellant.—1. The defense of usury being strictly personal, it can not be set up by the widow and heirs of the deceased mortgagor in a case like this.—*Baskin v. Calhoun*, 45 Ala. 582 ; *Leman v. Marshall*, 47 Ala. 362 ; *McGuire v. Van Pelt*, 55 Ala. 344 ; *Griel v. Lehman*, 59 Ala. 419 ; *Butts v. Broughton*, 72 Ala. 294. Usury only renders the contract voidable to the extent of all interest, and does not affect the enforcement of the contract as to the principal. *Bradford v. Daniel*, 65 Ala. 133 ; *Dawson v. Burrus*, 72 Ala. 111. 2. The amendment to the prayer of the bill was no departure from the original purpose of the bill. 3. Complainant is entitled to have the legal title in the heirs of Medora I. Pearson divested.—*Matthews v. Sheldon*, 53 Ala. 136 ; *Johnson v. Crutcher*, 48 Ala. 368 ; *Harden v. Pulley*, 66 Ala. 55. 4. The reformation of the mortgage, so far as the widow of John T. Pearson is concerned, will relate back to the date of its execution. *Chapman v. Fields*, 70 Ala. 403.

INZER & MONTGOMERY, *contra*, cited *Taylor v. Forsey*, 66 Ala. 426 ; *Sanders v. Robertson*, 57 Ala. 465 ; *Burch v. Carter*, 44 Ala. 115 ; *Thames v. Rambert*, 63 Ala. 561 ; *Dawson v. Burrus*, 73 Ala. 111 ; *Davis v. Cook*, 65 Ala, 617.

McCLELLAN, J.—A contract which stipulates for the payment of a greater rate of interest than eight per cent. is tainted with an evil and unlawful intent in such sort that, while the payor, if he invokes equitable interposition upon it in his behalf, must do equity by offering to pay the legal rate of interest, the payee, when he becomes the actor in a court of equity, must always remove the taint by an offer to abate the whole of the interest, since the principal is all that he is entitled to recover, and without such abatement he can not be said to come into the court with clean hands. And

it is immaterial what the relief presently sought may be, whether an immediate enforcement of the debt, or some collateral advantage, as, for instance—the case at bar—the reformation of the contract in matter of description; whether direct and ultimate, or mediate and collateral, a court of conscience will not respond to the prayer of one who stands before it in the attitude of insisting upon any relief on a claim thus infected with this element of *quasi*-criminality. The bill in this case showing that the mortgage sought to be reformed was tainted with usury, and containing no offer to abate the whole interest, complainant was not entitled to any relief upon it; and the demurrers which were addressed to this point were properly sustained.—2 Brick. Dig. 124, §§ 71 *et seq*; 3 Brick. Dig. p. 572, §§ 23 *et seq*; *Hunt v. Acre*, 23 Ala. 580; *Noble v. Walker*, 32 Ala. 456; 6 Am. & Eng. Encyc. of Law, pp. 707, and notes.

The bill, as originally exhibited, prayed for both reformation and foreclosure of a mortgage. Subsequently, it was amended, so as to limit its averments and prayer to the matter of reformation. To the bill as thus amended it was demurred, that "the bill having been filed to revise a mortgage and foreclose same, can not now be amended so as to revise the same, and invest the plaintiff with title under his mortgage." This demurrer was sustained. This was error. Both the reformation of instruments, and the foreclosure of mortgages, are distinct grounds of equity jurisdiction. We do not understand that, when a mortgagee invokes the jurisdiction to reform his mortgage, he must also seek its foreclosure. Even where the mortgage debt has matured, and the right of foreclosure has accrued, there might be adequate reasons for an election on the part of the mortgagee to ask no relief beyond the reformation of the instrument, especially when, as in this case, the mortgage contains a power of sale under which foreclosure might be much less expensive.

Nor do we conceive that the ruling under consideration derives any aid from the fact that this amendment, by which the prayer for foreclosure was eliminated, also sought relief in addition to reformation, by means of the cancellation of an outstanding legal title to an undivided interest in the land held by certain of the respondents. Whether the allegations of the bill were sufficient to entitle complainant to this special relief, is not a question presented by this demurrer. Its theory is that, conceding their sufficiency in the abstract, they can not be brought forward by an amendment to the bill; which is the same as to say, that a com-

plainant can not embrace in one bill a case for relief by re-
formation of a mortgage, and also a case against certain of
the respondents who are necessary parties, and have already
been made parties to the bill for the purposes of reformation,
to remove a cloud from his title under the mortgage. The
position is untenable. The court having jurisdiction on the
bill as originally filed to reform and foreclose the mortgage,
the *gravamen* of the action being the effectuation of the
mortgage, any amendment which was not a departure from
this purpose, and which did not involve an entire change of
parties, was proper to be made; and certainly an amendment
having for its object the removal of a cloud which rested on
the mortgagee's title, and stood in the way of an efficient
foreclosure when he should see fit to foreclose by sale
under the power or otherwise, was in line with this pur-
pose. And, upon the considerations adverted to above, it
was open to the complainant to seek reformation alone, or
reformation and removal of the cloud, or both these forms
of relief, and in addition a foreclosure of the mortgage; and
all this he might do either by original averments and
prayer, or by any amendment of a bill originally filed for
reformation alone, or for one or both of these other ends.
The court, therefore, erred in sustaining the second assign-
ment of demurrer filed May 15th, 1891.

As we have said, whether the averments of the bill origin-
ally, or as amended, were sufficient to make a case for the
cancellation of the legal title to an undivided interest in the
land which was held by some of the respondents, is a dif-
ferent question. Other demurrers were addressed to this
point, and sustained by the court. The case made by the
bill in this connection is the following: J. T. Pearson pur-
chased the greater part of the land in controversy from
John F. and Jennie Williams, who were man and wife, and
paid with his own funds, at the time of the transaction,
$666 of the $1,000 purchase-money. Without any direc-
tions or request to that effect on the part of Pearson, the
vendors conveyed the land by warranty deed to Pearson *and
his wife*, Medora Pearson, and *their* heirs forever. After the
death of Medora Pearson, J. T. Pearson paid the balance of
the purchase-money out of the loan which the complainant's
mortgage was made to secure, and which was intended to
cover said land and a parcel of seventeen acres which Pear-
son had acquired from another source. It appears by the
bill that the Williams deed was signed in Texas, Pearson
and wife residing and being at the time in Alabama; and it
is averred that they made no demand for a conveyance to

them jointly, "nor did either of them know anything about the contents of said deed, as to its conveying said lands to them jointly." These averments are manifestly to be referred to the time of the signing of the deed by Mr. and Mrs. Williams. And a further averment is made, to the effect that Medora Pearson at no time "claimed any interest whatever in said lands in her own person or right." Yet the execution of the deed was completed by its delivery, presumably to the grantees, J. T. and Medora Pearson. The presumption further is that they then knew its contents, as a matter of fact, and its operation as a matter of law, and accepted it with the knowledge that it conveyed the land to them jointly as tenants in common. Upon these averments of the bill, and these presumptions afforded by them—that is, upon the case made by the bill—the land belonged, during the lives of Pearson and his wife, to them jointly; upon her death, Pearson had the fee in an one-half undivided interest, and a life-estate in the other, both of which estates passed under this mortgage, executed by him after the death of Medora Pearson; and upon his death the remainder in fee in one undivided half interest vested in right, and right of immediate possession, in the heirs at law of Medora Pearson.—*Harden v. Darwin*, 66 Ala. 62, and authorities cited. So that, even if it be granted that in a proper case— for instance, where a deed is made to husband and wife jointly by mistake, and accepted through ignorance of its contents, or of its operation in this respect, all parties intending to vest title in the husband alone, and supposing that to be the effect of what they have done, and after the death of the wife the husband conveys the land to a third person with like intent and understanding that he is seized of and is transferring the whole interest—that his alienee under these circumstances may have the heirs of the deceased wife held to be trustees of the legal title to an one-half undivided interest for his benefit, and decreed to cancel the same, or transfer it to him; granting all this, though only for the argument, the present bill fails to make such a case, in that, conceding the truth of all its averments, it may yet be also true that, in the case at bar, the husband accepted this deed knowing its contents and legal effect, and intending that it should operate to invest his wife with the title of a tenant in common with himself in the premises. On such a case, very clearly, the complainant would have no right to a decree divesting the legal title out of the wife's heirs; and the demurrers addressed to this point were properly sustained.

[Hawkins v. Pearson.]

The eleventh assignment of demurrer should have been overruled. On the averments of the bill, Margaret E. Pearson, the second wife, and the widow of J. T. Pearson, had no rights whatever in the land as against the mortgage of complainant. The right of homestead she could have acquired only through her husband, and because of his right of homestead being superior to the mortgagee's claim. He had no such right, since, after the death of his first wife, and prior to his second marriage, at a time when his signature alone to the deed was necessary and sufficient to convey the land freed from all homestead claim, he had executed the mortgage involved here with all requisite formality. She is a proper party to the suit, since she would be entitled to dower and homestead, if complainant fails, on his proof, to correct the description of the mortgage property, and hence she is entitled to her day in court to contest that issue. But, if the allegations of the bill are sustained by the evidence, and the mortgage reformed so as to embrace either the whole or a half interest in the lands in controversy, the reformation will relate back to the date of its execution, and stand for all purposes apparent on this record as if it had originally contained a correct description of the premises. The case on this point is wholly unlike that of *Chapman v. Fields,* 70 Ala. 403. There, the widow was entitled to dower in the premises in controversy, which had been aliened by the husband alone in his life-time, but had not been sufficiently described in his conveyance. The widow had three years after the husband's death, to institute proceedings against the alienee to have dower allotted. Code, § 1913. She did not know, however, that this land had been elienated until a decree had passed reforming the mortgage under which the alienee claimed, by making it embrace the tract in question. And when she thereupon begun proceedings for dower, she was met with the statute cited above, and it was insisted that her action was barred by its limitation. But this court held that, in such case, the reformation had effect from its date, and not from the date of the mortgage reformed; for, to hold otherwise, it was said, "would be to expose the widow to the possibility and danger of being barred of her dower before she could know it had been intended or attempted to be alienated by the husband," a course of reasoning as eminently sound as it would have been wholly inapplicable had the alienation intended and attempted by the husband taken place before his marriage, and hence before any dower rights attached; which is the state of facts involved here in respect of homestead claim in Mrs. Margaret E. Pearson.

Something is said in the briefs of counsel respecting complainant's right to be subrogated to the vendor's lien, which a part of the money borrowed by Pearson went to pay off. It may be that the facts properly presented would entitle complainant to relief in that direction, but we do not find that this question is raised on the record before us.

The decree of the Chancellor is reversed, and the cause is remanded.